CASE 66—ACTION ON A PROMISSORY NOTE—APRIL 19.

# Deposit Bank of Sulphur v. Peak, &c.

### APPEAL FROM HENRY CIRCUIT COURT.

JUDGMENT FOR DEFENDANT, R. F. PEAK, AND PLAINTIFF APPEALS.  RE-
VERSED.

PRINCIPAL AND SURETY—SIGNING NOTE AFTER DELIVERY—CONSIDERA-
TION—EVIDENCE—PLEA BY SURETY WHICH IS PERSONAL TO CO-
SURETY—AGREEMENT BY PAYEE TO INDEMNIFY ONE OF TWO SUR-
ETIES.

Held:   1. A surety can not escape liability on the ground that his
undertaking was without consideration, because he signed the
note after its delivery to the payee; the note having been ac-
cepted on condition that he should sign it.

2. Where the father of the principal in a note signed it as surety
before its delivery to the payee, and after its delivery de-
fendant also signed it as surety, evidence that defend-
ant was comparatively a poor man, and that the father
of the principal was a rich man, was not admissible to
show that the payee had accepted the note before defendant
signed it, and that it was therefore without consideration as
to defendant; and the admission of such evidence was prejudi-
cial to plaintiff.

3 A surety can not defend on the ground that his co-surety, who
has paid one-half the note and does not defend, was induced to
sign the note by fraudulent misrepresentations of the payee.

4. The fact that the payee bank represented to the co-surety that the
note he was about to sign was a renewal of a note of the princi-
pal, on which another had been bound as surety, when in fact
it was for an overdraft of the principal, would not be sufficient
to release the co-surety if he had made the defense.

5. The fact that certain officers of the payee bank executed an ob-
ligation to defendant's co-surety, who had paid one-half the
note, agreeing to indemnify him in the event he should have
anything more to pay, did not release defendant, as the obliga-
tion did not purport to bind the bank; and, even if it had done
so, it would not have been binding, as it was without consider-
ation.

JOHN D. CARROLL, ATTORNEY FOR APPELLANT.

This suit was on a note given to appellant bank by J. C. Garriott with E. M. Garriott and the appellee R. F. Peak as sureties for $1,132,24 on August 8, 1892. J. C. Garriott is the son of E. M. Garrott and brother-in-law of Peak. After the suit was filed E. M. Garriott, Peak's co-surety, paid one-half thereof of $724.63, and did not make any defense to the suit. J. C. Garriott is, and was, insolvent and practically made no defense, and judgment was rendered against him for the balance of the note. Peak made defense; the matter was tried by a jury and verdict returned for Peak; petition was dismissed as to him, and the bank appealed.

Among the defenses made by Peak he alleged, first, that the bank had accepted the note before he signed it, and therefore there was no consideration for his signature. Second, that after the maturity of the note J. C. Garriott, the principal, had on deposit with the bank more than sufficient to pay the note, and the bank having failed to apply the deposit to the payment of the note, he as surety was released. Third, that J. C. Garriott had placed with the bank for collection a lot of notes, the proceeds of which, when collected, to be applied to his indebtedness to the bank, including the note sued on, and that it should be credited by its proper proportion of said collections. The first two defences were the only ones considered by the jury.

The whole case turns upon the sufficiency of the evidence to support these two propositions—the instructions of the court concerning them, and the admission of evidence relating thereto. Our contention is that the verdict is not only flagrantly against the evidence, but there is no evidence to support it. Peak's own testimony is that when the note was presented to him by the cashier of the bank for his signature the cashier said: "J. C. Garriott told me to get you to sign this note with the old man." I asked no questions about it—the note then had been signed by J. C. Garriott and E. M. Garriott, and was then in the custody of the cashier of the bank.

We claim also that the court erred in its instruction to the jury, and that incompetent evidence was admitted as to the financial standing of Peak and E. M. Garriott.

AUTHORITIES CITED.

Sypert v. Harrison, 88 Ky., 461.

W. S. PRYOR, ATTORNEY FOR APPELLEE.

It is conceded by counsel for appellant that if the bank accepted the note sued on before it was signed by Peak as surety,

Deposit Bank of Sulphur v. Peak, &c.

and then taken in discharge of the old note with E. M. Garriott's name on it, looking to Garriott alone for the money, that the signing of Peak as surety, if he signed it after it was delivered, was without consideration and it is argued with much confidence that there is no evidence to show that the note was accepted by the bank in discharge of the old note before Peak signed it, or an entire absence of evidence showing the bank was not looking to him for payment. We think the evidence, while conflicting, strongly points to the conclusion that the note was not only lodged with the bank, but was accepted in discharge of the old note before Peak signed it, and this question having been submitted to a jury, its verdict should not be disturbed.

We think the law of the case was fairly presented by the instructions given, and that those asked by appellant were properly overruled and we ask an affirmance of the judgment.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee was sued, with J. C. Garriott and E. M. Garriott, upon a promissory note to appellant for $1,132.24, dated August 8, 1892, maturing four months thereafter, with credit indorsed, "Interest paid to Dec. 8, 1893, $90.57." J. C. Garriott was the principal; the other two, sureties. J. C. is a son of E. M. Garriott. E. M. Garriott paid one-half the note after suit, and made no defense. J. C., the principal, is insolvent. Appellee pleaded numerous matters in defense, all of which were disallowed by the court, being held insufficient on demurrer, save three, as follows: (1) That when appellee signed the note it had been signed by the two Garriotts, and had been accepted by appellant, the bank, and there was therefore no consideration for his signature; (2) that after the maturity of the note the principal, J. C. Garriott, had more than enough money on deposit with appellant to pay the note, and it failed to apply same on the note, and thereby appellee was discharged; (3) that said principal had placed a lot of notes belonging to him with appellant for collection, with direc-

tions to apply the proceeds, when collected, to his debts
owing it, including the one sued on, and that this note
should be credited by its proper proportion of the amounts
collected. Of the other matters attempted to be inter-
posed as defenses by appellant, and disallowed by the cir-
cuit court, but two are urged in argument here for appel-
lee as having been improperly rejected. They are con-
tained in the sixth and seventh paragraphs of the answer,
and are as follows: In paragraph 6 he charges that E.
M. Garriott, whose name was signed to the note as a
surety when he signed it, was not in fact bound on the
note, because he had been induced to sign a note of
which it was a renewal by fraudulent misrepresentation
of the bank to the effect that the debt was one represented
by a note signed by his sons, J. C. and T. E. Garriott,
when in fact it was but an overdraft by J. C. Garriott at
the appellant bank, of which T. E. Garriott was the cash-
ier. The seventh paragraph contained, in addition to the
matter set up in the sixth, the further allegation that ap-
pellant sued E. M. Garriott on this note in the Trimble
Circuit Court, and that said E. M. Garriott filed his an-
swer in that suit, pleading the above facts as discharging
him from liability on the note sued on, and that thereupon
appellant dismissed its action without prejudice, and that
afterwards appellant sued all the parties to the note in
Henry county, the appellee being served with summons
while there in the official discharge of his duty as Com-
monwealth attorney in that district, and that thereafter
appellant accepted of E. M. Garriott one-half of said note
sued on, and certain persons, who were alleged to be of-
ficers of appellant bank, executed to said E. M. Garriott
their individual obligation by which they undertook to in-
demnify him against having any further sum to pay on this,

debt. Said paper is in the following words: "Whereas, E. M. Garriott has this day executed to the Deposit Bank of Sulphur his promissory note for seven hundred and twenty-four ($724.63) dollars and sixty-three cents, to pay one-half of a note due to said bank by J. C. Garriott, R. F. Peak, and E. M. Garriott; and, whereas, the bank will not release said E. M. Garriott from the balance of said note: Now, in consideration of the execution of this note to said bank, we bind and obligate ourselves to said E. M. Garriott that, if he is compelled to pay any more of said J. C. Garriott note, that he will refund and pay to —————— the amount that he is required to pay on said note in excess of the amount he has this day paid by the execution of his note for $724.63, which is to be applied on J. C. Garriott, etc., note. Witness our hands this December 8th, 1898. J. T. Adams. Park C. Smith. T. E. Garriott. C. R. Martin." It was further alleged that said obligation was the obligation of the plaintiff (appellant), and that by reason of its execution appellant re leased said E. M. Garriott from liability on said note. Other allegations are made, but they are more in the form of argument and legal deduction than a pleading of substantive facts.

On the trial the evidence for appellee (he, of course, having the burden) in support of the first plea allowed by the court was, in substance, that J. C. Garriott, the principal, being required by the bank to renew the note, procured his father, E. M. Garriott, to sign it with him, telling him that another brother would also sign it, but, instead, being in a hurry, he took the note to the bank and delivered it to the cashier, saying that appellee would sign it, and requesting the cashier to call appellee's attention to it. Appellee testified that the cashier called him

into the bank some time in October or November, and told
him that J. C. Garriott had said he would sign that note
and presented it to him, and that he did sign it without
asking any question, or holding further conversation. This
appears to have been some days—at least, some time—af-
ter the first names had been signed, but it also appeared
that the note bore an earlier date than that of its actual
execution, to correspond with the date of the maturity
of the one for which it was to be in renewal. On the
second ground of defense, there was no evidence on ap-
pellee's showing, nor any evidence in fact, that J. C. Gar-
riott ever had on deposit in the bank, after the maturity
of the note, a sum as much even as half of the note sued
on, or any considerable amount. On the third ground,
the only evidence to support it was the testimony of J.
C. Garriott that he had deposited a number of notes—
names, amounts, and dates not recalled, though he gave the
names of some of the obligors, and approximated the
amounts owing by them—with the bank, as collateral for
his indebtedness to the bank; that his recollection was
that these notes amounted to from $2,500 to $3,300,—
something more than his indebtedness to the bank. He
did not know how much had been collected, nor did he say
how much was collectible. On all the evidence, we can
not say that there was enough to justify a submission
of the case to the jury. The peremptory instruction should
have been given, but was overruled. Appellant's evidence
showed conclusively that the note had not been accepted
by the bank till signed by appellee, that at no time did
J. C. Garriott have any sum of money on deposit in appel-
lant bank after the maturity of the note approaching as
much as half the amount of the note sued on, and that
the notes left as collateral had been collected, so far as

collectible, and applied on other unsecured debts owing the bank by J. C. Garriott, upon which they were expressly placed as collateral, and that some few dollars remained, which was placed to his credit on deposit, and that interest on the note was paid by charging it up to this account. The jury returned a verdict for appellee. In our opinion, there was not sufficient evidence to sustain the verdict, and it is so flagrantly against the weight of the evidence as to appear at first glance to have been given under the influence of prejudice or passion, and should have been set aside.

On the trial appellee was permitted to prove, over appellant's objection, that appellee was comparatively a poor man, his whole estate subject to execution, being his home in Shelbyville, worth some $2,500 after deducting incumbrances, and perhaps an equity in some other real property of no great value, all probably acquired since the creation of appellee's liability, and that E. M. Garriott was a wealthy man,—that is, was worth, anyhow, from ten to fifteen thousand dollars,—and that the cashier of appellant bank was his son. The only possible theory upon which the foregoing was admitted as relevant was to show that the bank had in fact accepted the note before appellee signed it, and that, therefore, as to appellee, it was without consideration; for it was probably supposed the bank would accept a solvent note without reference to, or wanting for the signature of, an insolvent surety. On the contrary, the effect of the testimony on this line must have had the contrary legal effect; for allowing another to sign after the obligation had become complete might operate to release the surety who had signed, because of the consequent change of the contract between the bank and him, and therefore the evidence would more strongly

rebut than support the presumption first supposed. But, to our minds, the most natural effect of this evidence was to lead the attention, of the jury to the consideration of the ethical relation of these parties as among themselves; that is, that it was more just to require the bank, whose cashier was the brother of the principal, to look to the father of the principal, who was rich and old, and would soon doubtless be distributing his estate among his children, to pay the whole of this debt, rather than to collect half of it from a justly popular, struggling, poor, and rising young attorney, whose recent preferment marked the esteem in which those trying the case and his other neighbors bore him. The evidence must have been highly prejudicial to appellant, as tending to distract the jury's attention from the pure legal question involved, to the solution of a sentimental one in its stead.

As from the foregoing it is apparent that the case must be returned to the lower court for a retrial, it is proper to here consider the legal value of the pleas made in paragraphs 6 and 7 of appellee's answer, and disallowed by the court. The effect of these pleas is, if allowed, to permit appellee to plead for his co-surety a defense personal to the latter, and of which he declines, for whatever reason, to avail himself. That appellee could rely on any defense of the principal is without question. Why? Because he has engaged to be answerable only for the legal liability of the principal on the undertaking. Therefore anything that gave the principal legal release is good as the surety's defense. But is such his liability to his co-surety? The only liabilities to the co-surety, independent of special agreement as between themselves, were not of contract, but are imposed by the law; that is, to divide, in proportion to their original liability, any indem-

nity received by their suretyship, and any damage neces-
sarily sustained by it; that is, so much of the principal's
debt as they may be required to assume. Daniel Neg.
Inst., section 1341. We are of opinion, furthermore, that
the matter set up for E. M. Garriott's defense would not
have availed said E. M., because it does not appear to us
that the alleged misrepresentation was of a material fact.
That it was the debt of J. C. Garriott which was being
secured is conceded. We can not see that it is material
whether that debt was formerly an overdraft or a note.
That T. E. Garriott, the cashier, is alleged to have been
bound on the original debt as surety, can not be deemed
a material fact; for it was not alleged that T. E. was to
become again bound on the debt if E. M. did not sign the
note, or that E. M. executed it in consideration
of T. E.'s release, and that J. C. Garriott, the
principal, was then insolvent. In other words,
the facts pleaded fail to show that either the bank
or T. E. Garriott gained anything, or that their alleged
position with reference to probable loss on account of J.
C.'s state of solvency was in any wise changed or affected
by the fact alleged to have been misrepresented to E. M.
Garriott. The consideration of E. M. Garriott's signature
was the future forbearance of an overdue draft of his son
J. C. Garriott. Whether the form of debt of which this
was a renewal had been secured by a personal surety or
not does not appear to us to any wise affect the under-
taking that E. M. Garriott, the new surety, was assuming.
But whether the co-surety, though not legally bound, could
by paying the whole debt thereby make the other surety
liable to contribute to him one-half, certainly the one about
whose liability, as between him and the payee, there was
some question may, without legal ground of objection

from another surety, pay what would be his own part of the liability, in no wise interfering with or adding to the original liability of his co-surety as contemplated and agreed to by the latter when he signed the paper. And that such surety did so pay can not have prejudiced any right of the surety who had paid nothing. Houch v. Graham, 106 Ind., 195; Bowser v. Rendell, 31 Ind., 128.

So far as the paper executed by Adams and others, and charged to be the act of the bank, is concerned, we are of opinion that it is invalid as a defense to appellee, for at least two reasons: (1) It does not appear to be the act of the bank, but the act of the parties who signed it, as their individual undertaking; nor is it alleged that the bank had agreed with them, for a consideration, to assume the obligation, or that it authorized them to so obligate it. (2) If it is the act of the bank, and could be so treated, then it appears to be without consideration; for, E. M. Garriott having paid but one-half of the sum for which he appears legally bound, the obligee's agreement, in consideration of such payment,—it being past due,—to release him from the residue, is not of binding force, for there would be no consideration to support it. From the foregoing it follows that the circuit court did not err in sustaining the demurrers to the paragraphs named, but that it did err in admitting the testimony criticised herein, as well as in not giving the peremptory instruction asked for. The judgment is reversed, and the cause remanded for proceedings consistent herewith.