[No. 29798. *En Banc.* August 24, 1946.]

Cowles Publishing Company, *Appellant,* v. John H. McMann *et al., Respondents.*[1]

*Witherspoon, Witherspoon* and *Kelly,* for appellant.

*Geo. W. Young,* for respondents.

Mallery, J.—The plaintiff brought this action upon the following contract of guaranty:

[1]Reported in 172 P. (2d) 235.

"UNCONDITIONAL GUARANTY — In consideration of the awarding of this Contract, the undersigned, jointly and severally, guarantee unconditionally at all times full payment of any and all sums now due or which may hereafter become due from the Distributor named in said Contract to the Cowles Publishing Company, upon the failure of said Distributor to pay promptly the full amount thereof when due, I hereby waive notice of default and agree that time of payment may be extended without notice to me or consent from me. The undersigned jointly and severally promise to pay such indebtedness, together with a collector's fee of at least Ten Dollars ($10.00), and in the event that suit is brought hereon, a reasonable attorney's fee in addition to costs allowed by statute. No bonus or discount that may be given Distributor by the Cowles Publishing Company shall in any way affect this guarantee."

The complaint alleged that, on January 9, 1944, one Richard Baker entered into a written contract with the plaintiff to distribute the Spokane Spokesman Review; that, concurrently, as part of the same transaction and in consideration of the awarding of the distributor's contract to Baker, the defendants executed and delivered to plaintiff the above guaranty; that, as of the date of the complaint, the sum of $1,899.04 was due and owing on the distributor contract by Baker to plaintiff; that demand and notice had been given.

Defendant answered by a general denial and three affirmative defenses, the first of which sounded in fraud and was abandoned before trial. The second affirmative defense alleged that the defendants McMann had not executed the guaranty as a community, while the third affirmative defense set up lack of consideration for the defendants' promises. All matters contained in the amended answer was denied by the reply, and, upon issues so joined, trial before the court and jury resulted in judgment dismissing the complaint.

The defendants McMann are Baker's mother-in-law and father-in-law. The defendants Bodine are his insurance brokers but otherwise are mere casual acquaintances.

The contract of guaranty, which was executed in duplicate, was printed below the distributorship contract upon

the same sheet of paper. The only date of the execution of the instrument is to be found in the upper left-hand corner of the distributor contract. The guaranty contract contains no date. The distributor contract contains eighteen paragraphs, one of which, paragraph eleven, provides that

". . . upon breach by the Distributor of any of the terms of this Contract, the Company may immediately terminate it and give notice to the Distributor to that effect."

Plaintiff introduced the contracts into evidence, together with evidence as to their execution and delivery, and then rested on its theory that they were executed concurrently, with the result that the contract of guaranty was supported by the same consideration as the distributor contract.

In the negotiations between Baker and the plaintiff, the latter was represented by its circulation manager, D. H. Wagner. At the time he signed the contract, on January 8, 1944, Baker was told by Wagner that he would be required to post a cash bond and to obtain guarantors. This he agreed to do, although no mention was made as to the identity of the prospective guarantors. The next day was a Sunday. It was imperative that the plaintiff have its papers distributed in the area in question. On that day, Baker commenced performance of his contract. The plaintiff furnished and charged him with newspapers, set up a "draw" account and other bookkeeping records pertaining to his territory.

Baker was never out of the "red." Plaintiff's records show that at the end of the first accounting period, January 31, 1944, Baker was indebted to them in the amount of $1,107.33. At the end of the second period, February 28, 1944, the indebtedness amounted to $2,495.15. On August 17, 1944, Baker owed them $3,378.36. Exercising the right reserved to it by paragraph eleven of the distributor contract, plaintiff, on that day, terminated the contract. Thereafter, certain sums were collected by the plaintiff and credited to Baker's account, leaving a net indebtedness of $1,899.04, for which, together with interest and attorney's fees, plaintiff seeks recovery.

The defendants introduced evidence to show that, at the time the distributor contract was signed by Baker, on January 9, 1944, they had no knowledge of the guaranty, and that, in fact, it was not submitted to them for signature until, at the earliest, the latter part of February. While it is uncontested that the guaranty was executed and delivered subsequent to the execution and delivery of the distributor contract, the actual date of delivery of the guaranty to Wagner was sharply disputed, the plaintiff contending that delivery took place on January 22, 1944, while the defendants placed the date as much later.

Plaintiff's motion for a directed verdict and challenge to the sufficiency of the defendants' evidence were denied. At the close of the trial, the case was submitted to the jury, which found for the defendants. The plaintiff's motion for judgment n. o. v. or a new trial was likewise denied, whereupon it prosecuted this appeal.

Denial of its various motions is assigned as error, as well as the court's refusal to adopt appellant's requested instruction No. 3. The court's instructions Nos. 2 and 3 are also assigned as error. All of the assignments of error present the same general question, viz.: whether, although the guaranty was admittedly executed and delivered subsequent to the awarding of the principal contract, there was a consideration moving from the appellant to either the respondents or to Baker which would support the contract of guaranty.

Appellant seeks to apply the following rule, laid down in 24 Am. Jur. 906, Guaranty, § 50:

"Although it may have been executed at a time subsequent to the creation of the principal obligation, a contract of guaranty is founded upon a consideration if its execution is the result of previous arrangement, the principal obligation having been induced by or created on the faith of the guaranty."

In substance, the appellant's position is that the distributor's contract was awarded upon the strength of Baker's promise to supply guarantors, and that subsequently, when the respondents signed as such, the consideration for the

distributor's contract attached to and supported their promise of guaranty.

At the time the distributor contract was executed, respondents had made no offer of guaranty, either to appellant or to Baker. There is nothing in the record to show any agency between Baker and respondents by which Baker might have offered their promise of guaranty to appellant. There is no showing that it was contemplated by Wagner and Baker that these particular people would become guarantors, nor had appellant at any time previous to the execution of the guaranty by respondents, indicated to them that it contemplated them as present or prospective guarantors.

A review of the cases makes it apparent that the rule contended for by appellant has been limited in its application to situations where at the time the principal obligation is entered into: (1) the guarantor has offered or promised the debtor to guarantee the debt for him, and the debtor communicates this information to the creditor, who executes the principal contract in reliance thereon, (2) or the guarantor makes such promise direct to the creditor with the same result, (3) or the debtor gives the creditor an assurance that, if he later deems the debt insecure, he might look to a certain person, then named by the debtor, to guarantee the debt. See *Paul v. Stackhouse,* 38 Pa. 302; *Standley v. Miles & Adams,* 36 Miss. 434; *McNaught v. McClaughry,* 42 N. Y. 22, 1 Am. Rep. 487; *Kennedy & Shaw Lbr. Co. v. S. S. Const. Co.,* 123 Cal. 584, 56 Pac. 457; *Williams v. Perkins,* 21 Ark. 18; *Case Threshing Mach. Co. v. Patterson,* 137 Ky. 180, 125 S. W. 287; *Williamson & Co. v. Ragsdale,* 170 Tenn. 439, 95 S. W. (2d) 922; *Garland v. Gaines,* 73 Conn. 662, 49 Atl. 19, 84 Am. St. 182; *Brandon v. Pittman,* 117 Fla. 678, 158 So. 443.

The cases clearly show that the basic premise of the rule relied upon by the appellant is that the creditor, in entering into the principal contract, *relied upon an existing offer or promise of the guarantor to bind himself at some future date.* There was no such offer or promise here, and thus the rule has no application.

■ It is contended further by appellant that, by provisions of paragraph eleven of the distributor contract, it was entitled, at the time the contract of guaranty was entered into, to have treated Baker's then existing indebtedness as a breach of the distributor contract and could at that moment have terminated its contract with Baker. Appellant then argues that its forbearance to do so gave rise to a new consideration, which attached to and supported the guaranty contract. The flaw in this argument is at once apparent. Mere forbearance, without an agreement to forbear, is not sufficient.

As stated in 1 Brandt on Suretyship and Guaranty 68, § 25:

"An agreement on the part of the creditor for general indulgence toward the principal, without any definite time being specified, with proof of actual forbearance for reasonable time, is sufficient. An agreement for delay in consideration of further forbearance means forbearance for a convenient or reasonable time. *But in order that forbearance by the creditor towards the principal may be a sufficient consideration, there must be an agreement on the part of the creditor that he will forbear.* Mere forbearance or omission on the part of the creditor to exercise his legal right without any agreement to that effect is not sufficient, because he may at any moment, and at his own pleasure, proceed. *There must be promise for promise.*" (Italics ours.)

See, also, 38 C. J. S. 1167, Guaranty, § 261, and 24 Am. Jur. 908, Guaranty, § 52.

There was no such agreement here. The appellant made no agreement either with Baker or the respondents to forbear termination of Baker's contract. It could have, so long as Baker was in default, "at any moment and at his [its] own pleasure" proceeded to terminate the distributorship contract.

■ Finally, appellant has assigned as error the fourth paragraph of the court's instruction No. 3, which paragraph reads as follows:

"On the other hand, if you find from a preponderance of the evidence that the awarding of the distributor's contract

reffer[r]ed to in plaintiff's Exhibit 1-A and 1-B was not made to the said Baker in reliance on said guaranty, but was independent thereof, then there would be no consideration for such guaranty, and if you find from the preponderance of the evidence that there was no such consideration, then your verdict should be for defendants."

for the reason that, by leaving it as a question of fact for the jury to determine whether the distributorship contract was awarded in consideration of obtaining the guaranty, the court violated the parol evidence rule in permitting the terms of an unconditional written guaranty to be contradicted by oral evidence.

In *Lazear v. Nat. Union Bank of Maryland*, 52 Md. 78, 36 Am. Rep. 355, it was held reversible error *not* to submit this question to the jury. As there stated:

"The guaranty of the appellant is shown to have been executed by him and accepted by the appellee, and the subsequent discounting of paper, of which Lazear Brothers were drawers, or which they had endorsed, furnishes *prima facie* evidence that such discounts were made upon the faith of the guaranty. But such *prima facie* evidence may be rebutted by other proof offered by the guarantor, or by facts and circumstances put in evidence by the appellee. Whether the money was parted with by the appellee on the faith of the guaranty or otherwise, is a question exclusively for the determination of the jury, and there are some facts and circumstances appearing in the evidence, as contained in the record, which should have been submitted to the consideration of the jury, whose duty it is to determine to what weight, if any, they are entitled. We are of opinion, therefore, that there was error in rejecting the appellant's fourteenth prayer."

See, also, *Currie Fertilizer Co. v. Byfield*, 9 Ind. App. 180, 34 N. E. 451, 36 N. E. 438. The question was properly one for the jury.

Upon this question, the date of the execution of the guaranty became material.

 Parol evidence is admissible to contradict the date of a written instrument. *Shelton v. Dunn*, 6 Kan. 128; *Gately v. Irvine*, 51 Cal. 172; *Levy v. Dusenbery*, 32 Cal. App. 411, 163 Pac. 231; *McFall v. Murray*, 4 Kan. App. 554,

45 Pac. 1100; *Randolph v. Mullen,* 73 Okla. 199, 175 Pac. 512.

■ Furthermore, it is always competent to show by parol evidence that the date inserted in a written instrument was not the date of delivery. *Rupert Nat. Bank v. Insurance Co. of North America of Philadelphia,* 40 Idaho 530, 234 Pac. 465.

Such evidence does not contradict or vary the language of the contract. As stated in 3 Jones Commentaries on Evidence (2d ed.) 2757, § 1511:

"By operation of law, a written agreement merges within itself all prior negotiations which it purports to cover. Since the writing thus becomes the sole material fact, evidence concerning negotiations becomes wholly irrelevant and immaterial, and the courts will hear none of it. The rule of merger does not purport to apply except in connection with writings which have become legally complete and effective or binding. Accordingly it may of course be shown by parol or otherwise that there was no proper execution or delivery of an apparent agreement. The general rule that antecedent and contemporaneous oral stipulations cannot be received to alter or vary the term of a written contract 'has no application when the execution of the writing is the subject of inquiry. It presupposes the due execution and delivery of the writing in a way to bind both parties to its terms.'"

Respondent affirmatively pleaded irregularity of execution. Under the issues of the case, the evidence was clearly admissible.

The judgment is affirmed.

MILLARD, BLAKE, JEFFERS, and CONNELLY, JJ., concur.

SIMPSON, J. (dissenting)—As indicated by the majority opinion, the question for decision relates to whether there was a consideration for the guaranty signed by respondents. The guaranty contract was printed at the bottom of the page which contained the written agreement entered into between appellant and Richard Baker, the distributor. The seventeenth section of that contract provided:

"17. The Distributor will deposit and maintain with the Company a satisfactory bond for the performance of his covenants and obligations hereunder."

It is my contention that the contract of guaranty was valid and founded upon sufficient consideration, though it was signed at a time subsequent to the signing of the contract between appellant and Richard Baker and no promise was made by respondents at the time the original contract was signed.

"A contract of guaranty is a form of commercial obligation which should be construed in furtherance of its spirit, without strict technical nicety, to promote liberally the use and convenience of commercial intercourse. The words of a guaranty should receive a fair and reasonable interpretation to effectuate the intention of the parties, and the circumstances accompanying the transaction may be considered in seeking the intention of the parties. The court should give the instrument that construction which will best accord with the intention, as manifested by the language in the light of all the surrounding circumstances, without stretching the words beyond their import in favor of the creditor or restricting them in aid of the guarantor." *Walton v. Hospital Ass'n,* 178 Md. 446, 13 A. (2d) 627, 128 A. L. R. 970.

"Although it may have been executed at a time subsequent to the creation of the principal obligation, a contract of guaranty is founded upon a consideration if its execution is the result of previous arrangement, the principal obligation having been induced by or created on the faith of the guaranty." 24 Am. Jur. 906, Guaranty, § 50.

"Although a contract of guaranty is executed subsequently to the principal contract, it is regarded as being made at the same time so as to constitute a part of the same transaction and be supported by the same consideration, and not to require a new consideration, where it is executed pursuant to an understanding had before and is an inducement to the execution of the principal contract; or where it is delivered before any obligation or liability is incurred under the principal contract; or where it is made pursuant to some provision in the principal contract; or where the principal contract does not become operative until the execution of the guaranty; or where the contract of guaranty expressly refers to a previous agreement between the principal debtor and the creditor which is executory in its character and embraces prospective dealings between the parties." 38 C. J. S. 1164, Guaranty, § 26b.

It is the general rule that the promise of a guarantor to secure the obligation of the principal debtor may be supported by the consideration of the principal contract. Thus in *Pacific Nat. Bank v. Aetna Indemnity Co.,* 33 Wash. 428, 74 Pac. 590, in which it was contended that no premium had been paid for a bond, it was stated:

"Ordinarily the consideration of the contract for the performance of which a surety obligation is given, is sufficient to sustain such obligation, as against the surety. A consideration moving to the principal alone, contemporaneous with or subsequent to the promise of the surety or guarantor, is sufficient."

It is also the settled law that, where the guarantor promises that he will secure the obligation, thereby inducing the guarantee to extend credit or suffer some detriment, the subsequently executed contract of guaranty will relate to and be supported by the principal contract. This was clearly recognized by this court in *Title Guaranty & Surety Co. v. Packard,* 75 Wash. 178, 134 Pac. 812, where it appears that the Packard-Spink Company, appellant, entered into an improvement contract with the city of Seattle, and the plaintiff-respondent supplied the required bond upon the condition, however, that appellant would indemnify it. A bond of indemnity was accordingly delivered to an agent of respondent but was not considered satisfactory at the main office. Three months later, a bond of indemnity was executed and accepted by the respondent. At that time, the work was about one third completed. The Packard-Spink Co. defaulted, and respondent paid the city and then recovered in an action on the second indemnity bond. In affirming the judgment of the superior court, it was said:

"We think there was clearly a consideration for the second agreement. The first agreement was not accepted as a compliance with the original contract to indemnify, and the second was executed in fulfillment of such contract. *It is not necessary to its validity that a written agreement to indemnify against liability under a contract be executed simultaneously with the contract indemnified.* It is enough that it be executed in compliance with the agreement, whether at the time of the agreement or thereafter. 'The

general rule in regard to guaranty is that, if the guaranty and contract guaranteed are a part of the same transaction, the consideration for the latter supports the former; while if they are not one transaction the bond must be supported by a consideration independent of the consideration for the original contract.' *Considine v. Gallagher,* 31 Wash. 669, 72 Pac. 96 [469]." (Italics mine.)

In *Considine v. Gallagher,* 31 Wash. 669, 72 Pac. 469, cited in the above case, action was brought on the bond executed to secure the faithful performance of a building contract. The complaint alleged that the contract was entered into December 12th, and the bond bore the date of December 19th. In passing it was held:

"The contention is that the bond was executed so long subsequent to the original contract that it cannot be presumed to be a part of the same transaction, or supported by the original consideration, and for that reason it was necessary that it be alleged that the bond was made upon sufficient consideration, in order to state a cause of action upon it. The general rule in regard to guaranty is that, if the guaranty and contract guaranteed are a part of the same transaction, the consideration for the latter supports the former; while if they are not one transaction, the bond must be supported by a consideration independent of the consideration for the original contract."

Accord: *De Mattos v. Jordan,* 15 Wash. 378, 46 Pac. 402; *Tomanovich v. Casey,* 106 Wash. 642, 180 Pac. 919; *Thompson v. Moe,* 147 Wash. 133, 265 Pac. 457.

The following cases indicate the conclusion which should be reached in the case at bar:

In *Williams v. Perkins,* 21 Ark. 18, it appears that the principal obligation was signed by Williams & Parker and O. B. Parker, and by Gideon J. Williams and Wm. T. Williams as sureties. When the writing was signed by the principal obligors, it was agreed that the sureties would sign it also, they then being absent. Perkins, the payee, took the instrument and secured the signatures of the sureties. It was held that the consideration was sufficient to bind the sureties.

In *Moies v. Bird,* 11 Mass. 436, 6 Am. Dec. 179, a party agreed to give a note as part of the consideration for the purchase of land, with the promise to secure an endorser as surety. Two days later the note was endorsed by the surety. In holding the surety liable the court said:

"If it was a fact that his signature was in consequence of the purchase made by his brother, upon representations made that he would sign the note, although his signing was not until after the delivery of the deed, his act ought to be referred to the date of the transaction; and he must be presumed, when he signed in blank, to have assented to such a reference; so that he would be considered, in law as well as justice, as having placed his name on the note at the time it bears date, if that be necessary to give effect to his engagement."

In *Bowen v. Thwing,* 56 Minn. 177, 57 N. W. 468, the court, in passing upon the issue presented as to whether or not a surety who signed subsequently to the signature of the maker was liable, stated:

"It is not necessary, of course, that the consideration to sustain a surety's undertaking should run to the surety. It may be, and generally is, paid to the principal. It is enough if the creditor rely on the surety. It is true that the agreement that the surety should sign in this case was not made with her, and until she signed she was in no way bound by it; but, as any one who executes a contract binding on its face must be presumed to do so in order to bind himself, her signing must, if necessary to bind her, be referred to what took place when the note had its inception,— to the agreement then made by the principal that she should sign. In signing, she in fact carried out that agreement, and she must be conclusively presumed to have so intended when she signed,—to have intended to carry out any agreement with respect to her signing which the principal, who requested her to sign, had made."

*Deposit Bank of Sulphur v. Peak,* 110 Ky. 579, 62 S. W. 268, 96 Am. St. 466, is another case in which it was held that a surety cannot escape liability on the ground that his undertaking was without consideration because he signed the note after its delivery to the payee, the note having been accepted on condition that he should sign it.

An early California case, *Winders v. Sperry,* 96 Cal. 194, 31 Pac. 6, is interesting from the standpoint of the language used. The payee of a note advanced money to the maker with the undertsanding that a certain person would endorse it. The supreme court of that state held that, since the transaction was not completed until the endorser signed, the original consideration supported the guaranty. It was said:

"It is true, in general, that one who adds his signature to a promissory note after its execution and delivery is not bound unless there is a new consideration. But this is not that case. The execution and delivery were not complete until it was signed by appellant.

"But if we are bound to conclude that it had been executed and delivered as to one of the makers, there was a consideration for the subsequent signature of the appellant. As the contract was that he should sign the note, and the note was accepted only upon that understanding, the payee could have canceled it or tendered it back if appellant had refused to sign, and maintained a suit at once for his money.

"The note was payable one year after date, and the credit was given on the promise and in consideration of appellant's signature. Had he not signed the note this consideration would have failed.

"But while the general rule as to a signature obtained after the execution and delivery of the note is as above stated, it has been held that where the borrower promises at the time of the loan and the execution and delivery of a note, signed by himself alone, that he will procure another signature, that the person so signing afterwards is bound; that the subsequent signature is not without consideration."

The case of *McNaught v. McClaughry,* 42 N. Y. 22, 1 Am. Rep. 487, cited by the majority, has an important bearing upon this case. At the time of the making of the note, the original obligor promised to secure the endorsement of his father, should the holder of the note deem himself insecure. Several months later, the plaintiff became dissatisfied with his security, and the maker obtained the signature of his father, the defendant's testator. In holding that the subsequent endorsement was supported by a valuable consideration, the court said:

"Suretyship upon promissory notes may be made in various forms, as by becoming an undersigner, an indorser

or formal guarantor. In every form the existence of a sufficient consideration between the maker and the lender establishes a sufficient consideration also as against the surety. In practice there is usually no communication between the lender and the surety. The business is transacted between the principals alone."

The legal proposition is restated in the opinion by the following illustration:

"If Abram had given his note to the plaintiff, and the same had been accepted in performance of the contract without further condition, and the note was yet unmatured, the obtaining an additional indorser would have been a gratuitous act on the part of Abram, and the indorser would not be bound. He would not be bound, not because there was no direct consideration moving to himself, but because there was no sufficient consideration moving to his principal. On the other hand, if Abram had originally agreed with the lender that he would obtain the new indorser, and had obtained the money upon the faith of that promise, then his finding the additional indorser was based upon a valid consideration, and the indorser was held by his signature."

Accord: *Harrington v. Brown,* 77 N. Y. 72; *Kneisley Lbr. Co. v. Edward B. Stoddard Co.,* 131 Mo. App. 15, 109 S. W. 840; *Pauly v. Murray,* 110 Cal. 13, 42 Pac. 313; *Stroud v. Thomas,* 139 Cal. 274, 72 Pac. 1008, 96 Am. St. 111.

Respondents were not strangers to contracts such as the one in controversy. They had signed a similar agreement a year previous. In any event, respondents cannot claim that they did not intend to be bound for the reason that paragraph seventeen of the contract was plainly printed upon the page containing the guaranty which they signed. In paragraph seventeen, appellant and the distributor, Baker, definitely agreed that Baker should secure a bond; that in itself proves that there was a consideration sufficient to support the guaranty signed by respondents. The court erred in submitting to the jury the question relative to whether there was a consideration for the guaranty. That was a fact admitted by the contract, undisputed by oral

evidence, and should have been so decided as a matter of law.

Appellant was entitled to recovery, and judgment should have been entered in its favor.

BEALS, C. J., STEINERT, and ROBINSON, JJ., concur with SIMPSON, J.