[No. 357-2. Division Two. March 3, 1972.]

GELCO IVM LEASING Co., *Appellant,* v. JOHN ALGER *et al., Respondents.*

*James D. McBride* (of *Julin, Fosso & Sage*), for appellant.

*Marshall D. Adams* (of *Muscek, Adams, Swayze & Baker*), *Elvin J. Vandeberg* (of *Kane, Vandeberg & Hartinger*), and *Creighton C. Flynn* (of *Flynn & Briggs*), for respondents.

PEARSON, J.—This is an action on a contract of guaranty. At the conclusion of plaintiff's case, the trial court granted the guarantor-defendants' challenge to the sufficiency of the evidence. The plaintiff, Gelco IVM Leasing Company, appeals from a dismissal of its cause of action. The principal issue raised on appeal is whether or not the contract of guaranty was supported by consideration. We affirm the dismissal.

The defendants (guarantors) were shareholders in Proma Corporation, which is now bankrupt. On January 23, 1968, Proma entered into a 5-year lease agreement with Gelco, involving a piece of machinery called a "boring mill." On January 30, 1968, the machine was delivered and installed in Proma's plant. On February 8, 1968, the defendants executed an instrument denoted a "guarantee" by which they agreed to guarantee Proma's performance of "any lease now in effect or hereafter executed . . ."

The negotiations for the lease of this boring mill were

carried out between Proma's general manager, James Callery, and Gelco's executive vice-president, Melvin Peters. Gelco's evidence established that Callery promised Peters, prior to execution of the lease and delivery of the machinery, that the guarantors would sign the guaranty and that Peters relied upon such promise in entering into the lease agreement and installing the machinery in Proma's machine shop.

There was no proof, however, that the guarantors promised Gelco to guarantee this transaction prior to the execution of the lease or delivery of the machine, and there was no proof that they had authorized Callery to make such promise on their behalf, or that they even knew of Callery's promises.

█ An initial problem relates to the posture of this case on appeal, since the trial court entered findings of fact and conclusions of law after granting the challenge to the sufficiency of the evidence. This problem requires that we determine whether the trial court weighed the evidence and determined the factual evidence contrary to Gelco's position, or whether the trial court allowed Gelco the benefit of the most favorable inferences from the evidence and determined as a matter of law that Gelco failed to establish a prima facie case. *N. Fiorito Co. v. State,* 69 Wn.2d 616, 419 P.2d 586 (1966).

Both in its oral decision and in finding of fact 5, set forth in the margin,[1] the trial court stated that there was no evidence or inference from the evidence that the guarantors had promised to guarantee the lease in question prior to execution of the lease or prior to the delivery of the boring mill. On that premise, the court held, as a matter of law, that a necessary element of Gelco's case—consideration—was lacking. Accordingly, our review must determine

[1]Finding of fact 5. "The plaintiff introduced no evidence, or inference from evidence, that at the time of the execution of the lease dated January 23, 1968, or at the time of the delivery of the leased equipment, any of the defendants had offered or promised either the Proma Corporation or the plaintiff that they would guarantee the obligation of Proma Corporation under the lease hereinabove referred to."

whether there was a reasonable inference from Gelco's testimony that would support its theory of consideration.

Gelco urges two factual bases for a finding that the guaranty was supported by consideration. (1) The consideration supporting the lease should also support the guaranty, since the entire dealings between Proma and Gelco showed that the lease and the guaranty were intended as one contemporaneous transaction. (2) The naked promise of Proma's manager to provide guarantors and Gelco's reliance upon that promise are sufficient to support a guaranty which, in fact, is executed after the principal debt is consummated.

Under either contention, Gelco is faced with a similar obstacle. In neither the dealings leading to the lease nor in the testimony concerning Proma's promise to supply guarantors were the defendants shown to have been personally involved, except as will later be pointed out. This leads us to the central question raised under both contentions. Can the debtors' promise to the creditor alone, without affirmative commitment by the guarantors in advance, bind them to a general contract of guaranty which they sign after the principal obligation has been incurred?

To answer this question, we turn to established principles of guaranty law. Three cases are pertinent: *Cowles Publishing Co. v. McMann*, 25 Wn.2d 736, 172 P.2d 235, 167 A.L.R. 1164 (1946); *Universal C. I. T. Credit Corp. v. De-Lisle*, 47 Wn.2d 318, 287 P.2d 302 (1955); and *Northern State Constr. Co. v. Robbins*, 76 Wn.2d 357, 457 P.2d 187 (1969). We glean these general principles from those cases:

(A) As with other contracts, a contract of guaranty is not binding unless supported by a legal consideration.

(B) It is not necessary that the consideration for the promise of guaranty be distinct from that of the principal debt, if such promise were made *as a part of* the transaction which created the principal debt.

(C) If the guaranty contract is made independently of the main debt, it must have a separate and distinct consideration and, accordingly, a past transaction or executed consideration will generally not support a contract of guaranty.

(D) However, a guaranty may be supported by the consideration of an earlier contract, the performance of which is allegedly guaranteed if one of three circumstances exist. In *Cowles Publishing Co. v. McMann, supra,* the circumstances were described as follows at page 740:

■ the guarantor has offered or promised the debtor to guarantee the debt for him, and the debtor communicates this information to the creditor, who executes the principal contract in reliance thereon, (2) or the guarantor makes such promise direct to the creditor with the same result, (3) or the debtor gives the creditor an assurance that, if he later deems the debt insecure, he might look to a certain person, then named by the debtor, to guarantee the debt. [Citing cases.]

■ It can be seen that Gelco's "single transaction" theory of consideration is premised upon general principle B, stated above. We answer that contention, as did the Supreme Court in *Northern State Constr. Co. v. Robbins, supra* at 361: "Without some indication to defendants [guarantors] prior to the execution of the construction contract [principal debt] that a guaranty was expected, we cannot imply a promise to supply that guaranty."

Where, as here, Gelco made no request of the guarantors for a promise of guaranty prior to execution of the lease, and where Proma's manager was not shown to have authority, as agent, to bind the shareholders to a promise of guaranty at that time, a promise of guaranty cannot be implied nor was one, in fact, established. The guarantors were not shown to have been a part of the dealings leading to consummation of the lease and, consequently, are not bound by those negotiations.

Gelco's second theory of consideration is premised upon the third subdivision of principle D. At first blush, that subdivision appears to support Gelco's position that a debtor's naked promise to furnish guarantors with reliance by the creditor, is sufficient consideration to support a later contract of guaranty by those named by the debtor.

■ We disagree with that interpretation of subdivision (3), for these reasons. In *Cowles Publishing Co. v. Mc-*

*Mann, supra, Universal C. I. T. Credit Corp. v. DeLisle, supra,* and *Northern State Constr. Co. v. Robbins, supra,* the Supreme Court does not waver from the basic premise that the creditor must rely upon *an existing offer or promise of the guarantor to bind himself at some future date.* Gelco's interpretation of subdivision (3) is inconsistent with that basic premise.

Subdivision (3) is applicable, according to its terms, if the creditor "later deems the debt insecure." Inherent in that requirement is the concept of a new consideration which arises when the creditor, feeling the debt insecure, actually agrees to forbear pursuing the debt if the earlier promise by the debtor to furnish designated guarantors is forthcoming within a reasonable time.

The Supreme Court, in *Cowles,* indicates that an agreement to forbear may give rise to a new consideration which would support a guaranty executed after the principal debt is incurred. This construction of subdivision (3) is consistent with the basic premise mentioned above. Here, there was no agreement to forbear. We conclude that Gelco failed to establish a prima facie case on "forbearance" and, accordingly, the trial court was correct in holding subdivision (3) inapplicable as a means of establishing consideration.

The last contention concerns financial statements of the guarantors relied upon by Gelco. In November of 1967, personal financial statements of the guarantors were forwarded to West Coast Machinery by one of Proma's employees. These statements were furnished to induce West Coast to supply Proma with several machines involving approximately $150,000. When West Coast rejected a credit extension to Proma, negotiations with Gelco were undertaken with respect to leasing the boring mill.[2] Gelco obtained possession of those financial statements from West Coast and relied upon them in consummating the lease.

It is argued that use of the financial statements supports an inference that the guarantors had committed their

[2]West Coast Machinery Company was the supplier of the boring mill leased to Proma by Gelco.

promise of guaranty to the debtor prior to execution of the lease. This argument would support Gelco's "single transaction" theory and would also be persuasive for the applicability of subdivision (1), *i.e.,* that the guarantor had offered or promised the debtor to guarantee the debt for him, and the debtor communicated this information to the creditor, who relied thereon.

This argument would be persuasive had Gelco shown that the guarantors knew the financial statements were being used in the negotiations for the lease. Although present in court, the guarantors were not called as witnesses by Gelco. Proma's employees who testified were not asked if the shareholders had authorized the use of the financial statements. There was a failure of proof that use of the financial statements was authorized by the guarantors.

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.