495 P.2d 5

**SCHOOL DISTRICT NO. 91, BONNEVILLE COUNTY, State of Idaho, for the use and benefit of Idaho Concrete Products, Inc., an Idaho corporation, Plaintiff-Respondent,**

v.

**Eli TAYSOM, an individual dba Taysom Construction Company, et al., Defendants-Appellants.**

No. 10837.

Supreme Court of Idaho.

March 21, 1972.

Whittier & McDougall, Pocatello, for defendants-appellants.

Holden, Holden, Kidwell, Hahn & Crapo, Idaho Falls, for plaintiffs-respondents.

McQUADE, Chief Justice.

In 1967 Eli Taysom, doing business as Taysom Construction Company (contractor) was awarded a contract to build Skyline High School for School District No. 91 in Bonneville County. He duly executed a payment bond with United Pacific Insurance Co. as surety, and sub-contracted with Levi Gifford, doing business as Gifford & Driesel Masonry Construction (sub-contractor), to perform the masonry work on the new school. The sub-contractor worked on the school construction job from May 8, 1967, until April 10, 1968. During this time Gifford purchased most of his materials from Idaho Concrete Products, Inc., (supplier).

By January, 1968, Gifford, the sub-contractor, had encountered financial difficulties. On January 13 he met with the contractor and supplier to discuss his capability to finish the masonry work and to sat-

isfy his accounts payable. That meeting produced a document the meaning of which is disputed and lies at the heart of this case:

"January 13, 1968          ORDER NO. 1

"ACKNOWLEDGMENT OF PAYMENT AND LIEN WAIVER

"I, the undersigned, for and on behalf of the designated corporation, partnership, individual, hereby acknowledge full payment for any and all work or materials furnished in the construction or repair to that certain structure or improvement located upon the following described property:

" 'SKYLINE SENIOR HIGH SCHOOL FOR SCHOOL DISTRICT NO. 91, IDAHO FALLS, IDAHO.'

"and hereby state that any claim that I may have has been fully satisfied and paid. I further certify, warrant and guarantee that I, nor anyone working for me on my behalf, have not, and will not file any lien against the above described property.

/s/ Marion A. Ward

Marion Ward 'Authorized agent for Idaho Concrete Products'

"Subscribed and sworn to before the undersigned, a notary public in and for the County and State aforesaid, this 13 day of January, 1968.

/s/ John Weeks

Notary Public"

———◆———

On its face, the document appeared to express the supplier's acknowledgment of full payment for any work or materials furnished to any party in connection with the school construction, but it did not specify the time period it purported to cover. The sub-contractor remained on the job until April 10 and continued to be billed by the supplier for materials furnished after the first of January. After the sub-contractor left the job the contractor also purchased, and paid for, materials furnished by the supplier. During these transactions the contractor requested the supplier to proceed directly against the property of the sub-contractor to satisfy any claim it had against the sub-contractor.

On April 17, 1968, the supplier forwarded by certified mail a letter to the contractor stating the amount owed by the sub-contractor to the supplier, or to Utah Concrete Pipe Company (a parent company of the supplier which had also furnished materials to the sub-contractor). Two meetings of the contractor and supplier ensued, during which the supplier's representative was asked to sign another "Acknowledgment of Payment and Lien Waiver." He refused.

This action was brought by the school district in March, 1969, for the use and benefit of the supplier whose right to action on the construction bond is provided by the Public Contracts Bond Act, I.C. §§ 54–1925, 54–1927. The complaint alleged that the sub-contractor owed the supplier $8,371.23 for work and materials furnished since January 1, 1969, and it named the contractor, sub-contractor and surety as defendants. Although the sub-contractor answered the complaint he did not appear at trial except as a witness. Upon trial of the case without a jury, the trial court entered judgment in favor of the school district in the amount of $8,371.23 claimed for the use and benefit of the supplier, plus interest, costs and attorney fees, for a total judgment of $11,183.63.

■ The contractor has appealed and made six specific assignments of error.[1] Of these, assignments 2, 4, 5 and 6 place in issue the meaning and effect of the "Acknowledgment of Payment and Lien Waiver" executed by the supplier's representative during the January 13th meeting. Because the parties' agreement as to the period covered by this acknowledgment and waiver was not disclosed on the face of the document, the trial court properly admitted parol evidence to ascertain the intent of the parties.[2] Although the document bore a date, January 13, parol evidence was admissible to explain or contradict any meaning that might otherwise have been ascribed to the date.[3]

The evidence of what transpired at the January 13 meeting revealed that both the contractor and supplier intended to protect themselves from the sub-contractor's prospective inability to pay his bills. According to testimony of the supplier's representative, the contractor suggested that the supplier obtain from the sub-contractor an assignment of monies due him from the contractor. Supplier's representative stated that his company had no authority to obtain such an assignment, and suggested in turn that the contractor issue joint checks payable to both the sub-contractor and supplier. This the contractor declined to do. Instead, he requested that supplier's representative sign an "Acknowledgment of Payment and Lien Waiver" covering the entire time period of the school construction project. Supplier's representative flatly refused, explaining that he had no authority to do such a thing, and would not do it even if he could. As an alternative he offered to sign a statement acknowledging payments actually received, which covered materials furnished up to January 1.

He thereafter signed an instrument provided by the contractor without scrutinizing it because he believed it to reflect the foregoing conversation.

This testimony was not controverted by the contractor. Moreover, it was bolstered by testimony of the sub-contractor that he had settled his accounts with the supplier only up to January 1. The testimony is also fully consistent with the conduct of the contractor after the meeting. It is unlikely that he would have paid for materials subsequently furnished directly to him or that he would have urged the supplier to execute another "Acknowledgment of Payment and Lien Waiver" if the existing one truly had covered the entire time period of the project.

■ This evidence adequately supports the finding by the trial court that the parties intended by the document executed on January 13 only to acknowledge payment and to waive a lien as to materials furnished up to January 1. It further supports the finding that neither the sub-contractor nor the contractor relied upon any interpretation of that document as acknowledging payment or waiving a lien as to materials furnished *after* January 1. It also explains the trial court's conclusion of law (No. V), that the document was not a waiver of lien rights; for when read together with the findings of fact based on the evidence, that conclusion means that the document was not a lien waiver as to materials furnished after January 1. Finally, the evidence supports the finding that the document covered materials furnished only up to January 1, rather than to January 13. Consequently, the court properly included debts owed for materials furnished between those dates in its calculation of damages. In sum, all of the court's

1. A seventh assignment, listed as assignment I in appellant's brief, asserts generally that the district court "erred in rendering judgment for the Respondent and against the Appellant." This assignment does not "distinctly enumerate" error as required by Supreme Court Rule 42(2), and cannot be reviewed.

2. Nysingh v. Warren, 94 Idaho 384, 488 P.2d 355 (1971).

3. Rupert Nat. Bank of Rupert v. Insurance Co. of North America of Philadelphia, 40 Idaho 530, 234 P. 465 (1925) ; Cowles Publishing Co. v. McMann, 25 Wash.2d 736, 172 P.2d 235, 167 A.L.R. 1164 (1946).

findings and conclusions challenged in the assignments of error relating to the January 13 document are supported by substantial and competent evidence, and will not be set aside.[4]

In his third assignment of error the appellant contractor asserts that the trial court should have found a failure by the supplier to provide the contractor a written notice stating with substantial accuracy the amount claimed, as required by I.C. § 54–1927.[5] The trial court did find, without dispute, that the contractor received timely written notice of the aggregate amount owed by the sub-contractor to the supplier and its parent company in Utah. Neither is it disputed that the aggregate amount stated in the notice, $9,443.35, was substantially accurate as to the total claim.[6] Instead, the contractor maintains that since the aggregate figure was not broken down to show the supplier's claim alone, the notice was insufficient under the statute.

The dominant purpose of I.C. § 54–1927 is to protect laborers or suppliers by obligating the prime contractor on his bond to satisfy their unpaid claims.[7] That purpose will not be frustrated where there has been substantial compliance with the procedure prescribed for notifying the contractor of the unpaid claim. The notice in this case stated the aggregate claim of parent and subsidiary for materials furnished for construction of the school. The notice further informed the contractor that invoices identifying the charges comprising the claim were available upon request. There is no evidence that the contractor made such a request. Neither does the record disclose a reason why the contractor could not simply have paid the aggregate claim, allowing the supplier and its parent company to make the appropriate allocation. Moreover, no prejudice to the contractor is apparent from the fact that the claim asserted against him at trial is smaller than the claim stated in the notice. In light of these circumstances, we conclude that the notice given in this case substantially complied with the requirements of I.C. § 54–1927.

The seventh and final assignment of error attacks the rulings of the trial court admitting into evidence reproductions

4. Nysingh v. Warren, *supra note 2;* Thompson v. Fairchild, 93 Idaho 584, 486 P.2d 316 (1970).

5. In pertinent part, I.C. § 54–1927 provides:

"Every claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under this act, and who has not been paid in full therefor before the expiration of a period of ninety (90) days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute such action to final judgment for the sum or sums justly due him and have execution thereon; provided, however, that any such claimant having a direct contractual relationship with a subcontractor of the contractor furnishing such payment bond but no contractual relationship expressed or implied with such contractor shall not have a right

of action upon such payment bond unless he has given written notice to such contractor within ninety (90) days from the date on which such claimant performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the person to whom the material was furnished or supplied or for whom the labor was done or performed. Each notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business or at his residence."

6. There is some evidence that the correct figure was $9,444.38 rather than $9,443.-35, but the contractor does not argue that this trivial deviation detracted from sufficiency of the notice.

7. *See, e. g.,* United States for Use and Benefit of Hopper Bros. Quarries v. Peerless Casualty Co., 255 F.2d 137 (8th Cir. 1958), cert. denied, 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958), construing a similar federal statute, 40 U.S.C. 270b(a).

of the supplier's invoices for materials furnished from January through April, and of a ledger sheet kept at the parent corporation's office in Utah. Only the ruling which admitted copies of the invoices raises a justiciable issue because the copy of the ledger sheet was admitted merely to provide the court a convenient summary of data in the invoices. In the ordinary course of its business the supplier prepared simultaneous triplicate copies of each invoice. The original was forwarded to the customer, in this case the sub-contractor, one carbon copy went to the parent office in Utah and the other was retained at the supplier's Idaho office. The documents at issue consisted of photographic reproductions made by the supplier of its carbon copies at the Idaho office. In his testimony, the supplier's representative admitted that the reproductions were made for use at the trial.

The Uniform Photographic Copies of Business Records as Evidence Act, I.C. §§ 9–417 to 9–419, provides for admission of photographic copies without regard to the existence of the originals only if the copies were made in the ordinary course of business. Since the photographic copies in this case were produced not in the ordinary course of business but for trial, they did not fall within the Act. Rather, they were secondary evidence governed by I.C. § 9–411.[8] With exceptions not applicable here, this statute requires that evidence of the contents of a writing be the writing itself. Admission of the photographic copies was error.

However, to ascertain whether the error requires reversal it is necessary to consider the purpose for which the reproductions were offered. As photographs of the supplier's invoices these reproductions were introduced to establish the amount owed the supplier by the contractor for materials furnished from January 1 through April 10, 1968. Because it was agreed that the sub-contractor had fully settled his account up to January 1, the outstanding balance in the account on April 10 necessarily constituted the amount owed the supplier for materials furnished since January 1. This outstanding balance, $8,371.83, appears on the sub-contractor's copy of the April statement of account, sent to the sub-contractor by the supplier in the ordinary course of business. That copy of the April statement was admitted in evidence with no objection related to the "best evidence" rule; an objection charging immateriality properly was overruled.

The outstanding balance shown on this copy of the April statement was verified by the sub-contractor himself, who testified that he "had no reason to question the amount" and that all statements he received from the supplier were accurate to the best of his knowledge. Thus, the crucial data improperly admitted in the form

---

8. *"Secondary evidence of writings—When admissible.*—There can be no evidence of the contents of a writing other than the writing itself, except in the following cases:

1. When the original has been lost or destroyed; in which case proof of the loss or destruction must first be made.
2. When the original is in the possession of the party against whom the evidence is offered, and he fails to produce it after reasonable notice.
3. When the original is a record or other document in the custody of a public officer.
4. When the original has been recorded, and a certified copy of the record is made evidence by this code or other statutes.

5. When the original consists of numerous accounts or other documents which can not be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole.
6. When the original consists of medical charts or records of hospitals licensed in this state, and the provisions of section 9–420, Idaho Code have been followed.

"In the cases mentioned in subdivisions 3, 4 and 6, a copy of the original, or of the record, must be produced; in those mentioned in subdivisions 1 and 2, either a copy or oral evidence of the contents."

of reproductions of the invoices, was properly admitted in the form of the supplier's statement conceded by the sub-contractor accurately to state the amount owed for materials furnished after January 1. On this point the reproductions of the invoices were redundant, and their admission into evidence was harmless error. If other competent evidence independent of the incompetent evidence is sufficient by itself to support the findings of the trial court, the improper admission of incompetent evidence, which is not otherwise prejudicial, affords no basis for reversal.[9]

The judgment for respondent must be affirmed. This result requires us also to decide a collateral issue that respondent has raised by filing a motion for attorney fees on appeal. Disposition of the motion is governed by I.C. § 41–1839(3):

> "This section [allowing recovery of attorney fees] shall not apply to actions against surety insurers by creditors of or claimants against a principal and arising out of a surety or guaranty contract issued by the insurer as to such principal, unless such creditors or claimants shall have notified the surety of their claim, in writing, at least sixty (60) days prior to such action against the surety."

The procedure for such a motion was established by our holding in Molstead v. Reliance National Life Insurance Company,[10] that "the jurisdiction of this Court [to award attorney fees on appeal] * * * must be invoked by suitable pleading." That "suitable pleading" is a motion for attorney fees containing an averment, supported by the record, that notice was given the surety at least sixty days prior to the action, as required by the statute. Respondent's motion contains no such averment, nor do we find evidence in the record which would have supported such an averment if made.

Judgment for respondent affirmed. Motion by respondent for attorney fees on appeal denied. Costs to respondents.

McFADDEN, DONALDSON and SHEPARD, JJ., and MAYNARD, District Judge, concur.

---

9. Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769 (1949); White v. Smith, 43 Idaho 354, 253 P.2d 849 (1926).

10. 83 Idaho 458, 466, 364 P.2d 883, 887 (1961). *Molstead* dealt with former I.C. § 41–1403, subsequently re-enacted in 1961 as the present I.C. § 41–1839.