MARY B. FAUST, PLAINTIFF AND DEFENDANT IN ERROR.
   v. WILLIAM L. RODELHEIM, DEFENDANT AND PLAINT-
   IFF IN ERROR.

Argued March 17, 1909—Decided June 14, 1909.

A landlord and tenant executed a lease which the landlord refused to
      accept unless and until a surety for the performance of the
      covenants therein had been obtained.  The delivery of the lease
      did not occur until after the surety had signed it.  *Held*, until
      such delivery the contract of letting was incomplete, even though
      the tenant in the meantime may have entered into the occupancy of
      the premises and paid an installment of rent.  *Held*, also, that the
      delivery of the lease being contemporaneous with the delivery of
      the surety's obligation each contract became completed at the
      same time and the consideration which supports the principal
      contract supports the subsidiary one.

On error to the Atlantic Circuit Court.

For the plaintiff and defendant in error, *Thompson & Cole*.

For the defendant and plaintiff in error, *Higbee & Coulomb*.

The opinion of the court was delivered by

VOORHEES, J.   This is a writ of error to the Atlantic Cir-
cuit removing a judgment founded upon a verdict directed for
the plaintiff for $400 and interest.   The suit was brought
upon a written instrument guaranteeing the payment of rent
accruing under a written lease.   The lease was dated April
25th, 1904, made to the plaintiff by one Stone.   The guaranty
was endorsed upon the lease and was dated May 24th, 1904.
Both the lease and guaranty were drawn in duplicate and were
executed on the days of their respective dates.   The defend-
ant had directed Mrs. Stone, who subsequently became the
tenant, to one Calloway, a real estate agent, to look about for
her for a house in Atlantic City which she might rent.   The
defendant had promised her to become surety for her rent
before she went to Atlantic City.   After Calloway had secured

the premises the defendant promised Calloway to sign as surety upon the lease to be executed between the plaintiff and Mrs. Stone. One Bond, acting for Calloway as a matter of accommodation, prepared the written leases and the contract of suretyship in duplicate. The leases were then signed in his office by the plaintiff and Mrs. Stone upon April 25th. The defendant testified that on May 24th he signed the two leases as surety for the rent; that he met Mr. Calloway on the boardwalk, who remarked that he had been looking for the defendant for over a month and wanted him to sign as surety, gave him a fountain pen and he signed the two papers and gave them back to Mr. Calloway at the time. The defendant admits that he then saw Mrs. Stone's signature on the lease. Mr. Calloway at the time had the leases in his pocket. So far as appears from the testimony the leases had been in Mr. Calloway's possession from the time when the parties signed them up to the time when the surety executed them. There is no evidence of their previous delivery. The lease runs from May 15th, 1904, to October 1st. It was presented to the husband of the plaintiff, who was her agent and attended to her business, together with $50. Upon ascertaining how the payments were to be made he said "he wouldn't accept it unless he had security for the performance of the lease and until he got that he wouldn't receive any money, but when he got the security on the lease he took the money." This testimony is uncontradicted.

There are endorsed upon the lease two payments—April 25th, $50; May 16th, $350. It is asserted that Mrs. Stone went into possession of the premises on the 16th of May, and that being in possession and having made a payment of rent the contract of leasing had become completed, and therefore, when the defendant afterward, on May 24th, signed the guaranty, that instrument was without consideration and unenforceable.

As before stated, the evidence shows that the leases were not delivered but were held by Mr. Calloway awaiting the signature of the surety, and that the plaintiff had refused to accept them until the surety had signed. The contract of

suretyship signed before the delivery of the leases must be construed to have been executed upon the consideration of the leases thereafter delivered simultaneously with the delivery of such contract. In *Child Sur. & Guar.* 52 it is said: "If during the original negotiations between the principal and creditor, before the contract was complete, the creditor had stipulated that the maker should procure a surety when asked to do so there would have been a consideration for the contract of the surety whenever he might sign, as in such case the creditor suffered the disadvantage of parting with his money in reliance upon the surety to be obtained, and would not have parted with his money had it not been for the contract of suretyship yet to be made."

In the present case the plaintiff had refused to deliver the lease and accept the first payment unless he had security, and awaiting the promised signature of such surety the leases had remained in the hands of Mr. Calloway undelivered. The possession of the premises by the tenant before the delivery of the leases, if indeed the tenant was in possession, was a mere occupancy in contemplation of the subsequent delivery of the written lease with surety, and until such delivery the transaction was incomplete.

*Williams* v. *Perkins,* 21 *Ark.* 18, was a case where a payee of a writing obligatory took it at the time when it was executed by the principal obligors, and held it for some length of time before the signatures of the sureties were procured. At the time the writing was signed by the principal obligors it was understood that the sureties would also sign the bond. It was held that it did not follow that the writing obligatory was first made and signed by the principal obligors and accepted by the payee as a complete contract, and afterwards, at another time, the contract of the sureties was made as a distinct and independent transaction, because at the time it was signed by the principal obligors it was understood by the payee that the sureties would also sign and that the payee did not accept the writing obligatory as a complete contract until the signatures of the sureties were obtained. Although the

signatures of the principal obligors were procured at one time and those of the sureties afterwards, nevertheless, in contemplation of law, the promises were contemporaneous and formed a part of one and the same general transaction, and the same consideration which supports the promise of the one also supports that of the other.

In *Grim* v. *Semple*, 39 *Iowa* 570, it was held that a bond to indemnify a surety upon a bond for costs was sustained by a sufficient consideration, although not executed until after the bond for costs, where it appeared that the latter was signed under a promise that the former should be given. See, also, *Bowen* v. *Thwing*, 56 *Minn.* 177; *Smith* v. *Molleson*, 148 *N. Y.* 241.

The landlord and tenant having executed the lease which the landlord refused to accept unless and until a promised surety had been obtained, it would seem to follow from the above cases that the engagement of the surety when entered into would have a valid consideration for its support.

There is much authority for the view that a contract induced by the promise of security thereafter to be given, affords sufficient consideration for the contract of suretyship when given.

Aside from the above doctrine, however, this case shows that the delivery of the lease did not occur until after the surety had signed, and therefore until such delivery the contract of letting was incomplete, even though the tenant in the meantime may have entered into the occupancy of the premises and paid an installment of rent.

The delivery of the lease being contemporaneous with the delivery of the surety's obligation, each contract became completed at the same time, and the consideration which supports the principal contract supports the subsidiary one.

The contract of suretyship was therefore made upon sufficient consideration, and the court rightly refused the nonsuit, and also rightly refused to direct a verdict for the defendant, and was justified in directing a verdict for the plaintiff.

The judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, J.J.   16.

*For reversal*—None.