**BADER v. WILLIAMS.**

No. 656.

Municipal Court of Appeals for the District of Columbia.

Oct. 12, 1948.

Rehearing Denied Nov. 1, 1948.

---

Ewing Laporte of Washington, D. C., for appellant.

Milton M. Burke, of Washington, D. C., (Harry Kay, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant sued appellee for the full amount of an "I. O. U." signed by appellee and her husband on account of money previously advanced as part of the purchase price of a restaurant business to be conducted as a joint enterprise by the husband and appellant. The case was tried to a jury but at the close of the evidence the trial court directed a verdict for appellee. This appeal is from the judgment entered on such directed verdict.

The "I. O. U." sued upon was as follows:

"Glenn E. Bader
April 12, 1947
I. O. U. 2165.55 for
Business Expense at
4408 Arkansas Ave.
(Signed) Carl N. Williams
(Signed) Frances H. Williams"

Though various defenses, including fraud, were raised in appellee's answer, the parties have agreed that the sole issue raised by the appeal is whether there was any consideration for the execution of the "I. O. U." by appellee. The only evidence recited in the statement of proceedings and evidence relates to such issue of consideration.

Appellant's evidence was that he and appellee's husband agreed to purchase the restaurant business in the name of the husband on the understanding that appellant would advance the entire purchase price and that one-half thereof would be repaid to him; that prior to the purchase appellee's husband stated that all of the money he had was in a house, which was in the name of appellee, and that if appellant would advance all the money appellee's husband would deliver the note of himself and wife for one-half of the total sum paid by appellant; that on April 12, 1947, appellant paid out $4,331.10 on account of the business; further amounts were to be paid by him later under the same arrangement; that on the evening of the same day during a conversation between appellant, appellee and appellee's husband, the latter stated he would then make and deliver the promissory note for one-half of what appellant had already advanced. The making of this note was not requested by appellant. They did not have a note form and thereupon the husband wrote out the "I. O. U.", signed it, and passed it to appellee, who also signed without comment, and it was then and there delivered to appellant. Appellant further testified that appellee had no interest in the business and that she had never discussed it with him or with her husband in his presence prior to the date of the execution and delivery of the "I. O. U." Subsequently, after appellant had made further advances, appellee's husband offered him a promissory note for $2,605.30, representing one-half of the total advances, but the note was signed only by appellee's husband, who stated that his wife had "refused to go along with it."

The testimony of appellee was that she had given up a good job to accept employment in the restaurant business owned by her husband and appellant; that at the time she signed the "I. O. U." she knew that appellant was financing the business; that at the time she signed the "I. O. U." she was told that it would be replaced later by a note from her husband only, which would cover one-half of the entire amount advanced and to be advanced by appellant. Both she and her husband testified that she had signed the instrument merely as a witness and that it was intended merely as evidence that appellant had advanced money and had an interest in the business. On rebuttal such testimony was denied by appellant. Both appellee and her husband testified that at no time did she promise to give a note to appellant and that at no time did she receive anything as consideration for the execution of the instrument.

Appellant urges, first, that the instrument sued on was a negotiable promissory instrument so as to make applicable the provision of the Uniform Negotiable Instruments Law providing that such an instrument is deemed prima facie to have been issued for a valuable consideration.[1] We can not agree with this contention. The Code requires that a negotiable promissory instrument contain an unconditional promise or order to pay a certain sum in money on demand or at a fixed or determinable future time to order or to bearer.[2] While some courts have held to the contrary, the general rule is that an instrument which does not contain these essentials is merely an acknowledgment of a debt and not a good negotiable instrument.[3] As the instrument here in question does not comply with these requirements, none of the statutory presumptions of the Negotiable Instruments Act, such as that of valuable consideration urged by appellant, are applicable in this case.

Appellant concedes that it is the general rule sustained by the great weight of authority that the undertaking of one not a party to the original transaction, who, in pursuance of some subsequent arrangement, signs an instrument as surety, guarantor, or endorser after the original contract has been fully executed and delivered, is a new and independent contract, and to be binding must be supported by a new consideration independent from that of the original

1 Code 1940, § 28—201.

2 Code 1940, § 28—102.

3 Gay v. Rooke, 151 Mass. 115, 23 N. E. 835, 7 L.R.A. 392, 21 Am.St.Rep. 434; Shearer v. Shearer, 84 Colo. 234, 269 P. 19; Brannan's Negotiable Instrument Law, 6th Ed., 120.

contract.[4] He urges, however, that there is a well recognized exception to this rule that, if the original contract is induced by the promise of one of the parties that he will procure the signature of the person who subsequently signs in pursuance of such agreement, no new consideration is necessary to support the latter's undertaking.[5] Appellant seeks to bring himself within this exception.

The exception contended for by appellant has been limited in its application to situations where at the time the principal obligation is entered into: (1) the guarantor has offered or promised the debtor to guarantee the debt for him and the debtor communicates this information to the creditor who executes the principal contract in reliance thereon, (2) or the guarantor makes such promise direct to the creditor with the same result, (3) or the debtor gives the creditor an assurance that if he later deems the debt insecure he might look to a certain person, then named by the debtor, to guarantee the debt.[6]

We find this statement of the law supported both by reason and authority, whereas cases which take a different view either are not well reasoned or depend upon circumstances not present here.

 The trial court based its action in directing a verdict for appellee upon the decision in Kiess v. Baldwin, 64 App.D.C. 66, 74 F.2d 470, which was decided only on the pleadings. Subsequent to a trial of that case the court affirmed a jury verdict for plaintiff, the holder of the promissory note in suit. 67 App.D.C. 147, 90 F.2d 392. The later decision, however, was based upon the fact that the evidence had shown that a note of a wife had been given in substitution for an outstanding note of the husband, and the court held that the surrender of one note is a valid consideration for the latter. Appellant seeks to apply this rule to the instant case, but the law is otherwise because here there was no evidence that the instrument in question was given in payment of the pre-existing debt of the husband, and in the absence of such evidence there is no presumption that it was so given.[7]

 It is also urged by appellant that after the signing of the "I. O. U." he made further advances on account of the business in reliance upon appellee's signature and that the evidence would have justified the inference that appellee knew that he would make such advances in reliance thereon and hence that he suffered a detriment constituting sufficient consideration for the "I. O. U." This contention, however, can not be sustained. It might be otherwise had there been any evidence that appellant told appellee that he would make no further advances unless she signed the "I. O. U." On the contrary, he himself testified that he did not request her to sign the instrument and that he made all the payments, both before and after the signing of the "I. O. U.", in reliance upon the original statement of the husband that a joint note of the husband and wife would be given for one-half of all the payments. While appellee's promise, if it induced the subsequent furnishing of money for the benefit of her husband by appellant, might be consideration for a promise to repay such future advances when made, there would be no consideration for the instrument in connection with the advances made previously.[8] It was on account of such previous advances that the "I. O. U." was given.

Affirmed.

[4] Bank of Carrollton, Miss. v. Latting, 37 Okl. 8, 130 P. 144, 44 L.R.A.,N.S., 481.

[5] 44 L.R.A.,N.S., 481; 27 L.R.A.,N.S., 189.

[6] Cowles Publishing Co. v. McMann, 25 Wash.2d 736, 172 P.2d 235, 238, 167 A. L.R. 1164, and cases there cited; cf. Moies v. Bird, 11 Mass. 436, 6 Am.Dec. 179; Faust v. Rodelheim, 77 N.J.L. 740, 73 A. 491, 27 L.R.A.,N.S., 189; County of Montgomery v. Auchley, 92 Mo. 126, 4 S.W. 425; Pauly v. Murray, 110 Cal. 13, 42 P. 313.

[7] Freeman v. W. B. Moses & Sons, 52 App.D.C. 164, 285 F. 898; Webb v. National Bank of the Republic, 67 Kan. 62, 72 P. 520; In re Wegman Piano Co., D.C.N.D.N.Y., 221 F. 128; Ogden, Negotiable Instruments, 4th Ed., § 41.

[8] Greenwold Grift Co. v. Durham, 191 Ga. 586, 13 S.E.2d 346.