[No. 37814. Department One. April 22, 1965.]

KENNETH PETERSON, *Respondent,* v. ROY PETERSON, *Individually and as Executor, et al., Appellants.**

*Erle W. Horswill* (of *Kahin, Horswill, Keller, Rohrback, Waldo & Moren*) and Harold M. Eastvold, for appellants.

*Dudley N. Perrine,* for respondent.

HILL, J.—Kenneth Peterson, though named in the will of his father, Karl Peterson, was left nothing by that will, his father having bequeathed and devised all his property to his other three living sons. That will, dated May 23, 1950, is now in probate.

Kenneth filed a claim against his father's estate, asking for a one-fourth interest in it. The claim was rejected, and this action is brought to enforce the claim.

The claim is based on the contention that Karl Peterson and Aina Peterson, his wife (and the mother of his five sons), had executed or had agreed to execute mutual wills in 1939. Aina's will was executed April 3, 1939. She died

*Reported in 401 P.2d 343.

in 1940, and the will was probated by Karl, who was named as the executor thereof. This will left everything to Karl with full power of disposal during his lifetime. The fourth provision of her will reads:

My husband and I have this day executed similar wills. It is our agreement that the survivor of us will provide in his or her Will that any property remaining at the time of his or her death will be left to our five sons in equal shares. It is not the intent of this paragraph to limit in any way the use, enjoyment, or disposal of any of our property by the survivor, it merely being the intent that whatever property is left at the time of the death of the survivor of us will be devised and bequeathed by said survivor to our sons in equal shares.

Karl accepted and received all the benefits conferred upon him by Aina's will. It is agreed that all assets of his estate were once the community property of Aina and Karl, or were derived therefrom or traceable thereto, except for $1,390.26 which came to Karl as the sole heir of a deceased son. (This son had died subsequent to Aina's death, but prior to Karl's; and the son's death accounts for the fact that Kenneth, the plaintiff, is asking for one-fourth, rather than one-fifth, of his father's estate.)

Supporting his motion for a summary judgment, the plaintiff filed an affidavit by Rudolph Enquist,[1] who stated

---

[1] "I was well acquainted with the late Karl Peterson and all of his five sons, one of whom, Clarence Peterson is now dead. I continued to visit Karl Peterson occasionally after the death of his wife . . . On one occasion in the spring of 1959 or 1960 when I was visiting him I happened to mention that my brothers and I had had quite a bit of difficulty when we probated our father's estate due to the fact that we were unable to find the original of his will. In the course of the conversation Mr. Peterson remarked that such a case would not happen with him and he insisted on going to his bedroom and bringing out a will which he showed me which had been executed by him and left all of his property in equal shares to his sons. I was not particularly interested in looking at the will and unfortunately do not remember the date of the will or the names of the witnesses. I do remember, however, that it was typewritten and consisted of two page[s] and possibly a third and that the estate was left in equal shares to his sons, although, I do not remember whether Clarence Peterson, the deceased son, was named or not. . . . I can further definitely state that in the will I saw in the spring of 1959 or 1960 that no son was disinherited."

therein that Karl Peterson had shown him a will in 1959 or 1960 whereby he left all of his property in equal shares to his sons and that no son was disinherited.

The only affidavits in opposition to the motion for summary judgment were those of the defendant Roy Peterson and of the then attorney for the defendant. The former stated that he was the executor named in the will admitted to probate; that he had made diligent search and inquiry to determine whether his father had left any will, other than the one admitted to probate, and had found none; that he had made diligent search and inquiry to ascertain whether there had been any agreements made between his father and mother as to mutual wills, but had been unable to find any such agreement.

The affidavit of the attorney was to the effect that he had had conversations with the witnesses to Aina's will (one of them a lawyer), and was informed that neither of said witnesses had any recollection whatsoever of any agreement or will drawn for the decedent Karl Peterson.

The only answer to the affidavit of Rudolph Enquist was the statement that it was speculative.

On the showing made, the trial court concluded that Karl Peterson and his wife, Aina Peterson, had an agreement, which became irrevocable after the death of Mrs. Peterson, that the survivor of the community would leave any of their community property remaining at the time of the survivor's death to their sons in equal shares, share and share alike; and that the plaintiff, Kenneth Peterson, was entitled to an undivided one-fourth interest in all of the assets of the estate of Karl Peterson, deceased, less the sum of $1,390.26. Summary judgment was entered in accordance with these conclusions.

On the appeal from this judgment, the three sons who are legatees and devisees under the will of Karl Peterson, deceased, urge that there is not sufficient evidence to sustain the summary judgment.

The respondent, the disinherited son, begins his argument in his brief with this sentence:

The trial court based its decision on the ground that Karl Peterson when he filed his wife's will for probate, qualified as her executor and accepted all of the benefits of her will, was thereafter estopped to deny the statement in her will that she and he had a mutual agreement that any property remaining at the time of the survivor's death would be left in equal shares to their sons.

When the appeal was argued in this court on February 10, 1965, there was nothing in the record to indicate that the summary judgment was granted on the basis of equitable estoppel; rather, the findings and conclusions entered on March 9, 1964 indicated that it was entered on the basis that, on the undisputed facts as set forth in the pleadings and affidavits, it had been established that there was an agreement, as stated in the will of Aina Peterson, which became irrevocable on her death.

On the motion for summary judgment, there was before the court:

1. The statement in the will of Aina Peterson, as to the agreement between her husband and herself. (This, in itself, is not conclusive.)

2. The fact that her husband had probated that will and accepted the benefits conferred upon him thereunder. (His agreement with the conditions indicated therein can be inferred; but certainly it is no more than an inference.)

3. The fact, as stated in the affidavit of Enquist, that the husband (Karl) showed him a will leaving everything to his sons. (They were all named, except possibly the deceased son, and as to that, Enquist "could not remember." This could serve to strengthen the inference that there was an agreement.)

4. There were no direct statements from the witnesses to Aina's will, but, apparently an agreement by counsel that the witnesses had no recollection as to any agreement by Karl, or as to any will executed by him.

The will of Karl Peterson, admitted to probate, is not part of the record brought to this court. We do not know whether the trial court's finding that Karl had revoked a

previous will,[2] rests on a statement made therein, or is a conclusion of law from the execution of his will on May 23, 1953. The record here shows only the statement in Aina's will that "my husband and I have this day executed similar wills," and the statement by Enquist concerning a will that he had seen in 1959 or 1960, which was different from the one executed in 1953 and now in probate.

We would tentatively concede, on the undisputed facts before the superior court, that a reasonable man might be entitled to draw the conclusion that there was an agreement, as recited in Aina's will; but we are certainly satisfied that equally reasonable men could conclude that such an agreement was not established.

■   Where different conclusions may be reached from the undisputed facts and reasonable men might reach different conclusions, a summary judgment should not be entered. *Reed v. Streib,* 65 Wn.2d 700, 399 P.2d 338 (1965); *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963); *Preston v. Duncan,* 55 Wn.2d 678, 349 P.2d 605 (1960).

We come now to a consideration of the appellants' contention that the trial court proceeded on the basis of an equitable estoppel. (Karl Peterson having taken the maximum benefits under the will of Aina, was estopped to deny that he had made the agreement stated in that will, and his devisees and legatees were bound by that estoppel).

After the argument on the appeal, and on the 19th day of February, 1965, there was filed in this court a supplemental transcript containing the trial court's memorandum opinion, dated November 30, 1962, in which the trial court seemingly adopts the theory of equitable estoppel.

Since the findings and conclusions of March 9, 1964, on which the judgment is predicated, do not indicate that it is bottomed on equitable estoppel, the cause is remanded to the Kitsap County Superior Court with instructions to set aside the summary judgment appealed from and to take such further action as may be proper under the circum-

[2]Finding No. 3: "On the 23rd day of May, 1953, the said Karl Peterson revoked his previous will and executed a new will under the terms of which he left all of his estate to three of his sons  .  .  .  [excluding Kenneth, the plaintiff]."

stances; such further action not to preclude a consideration of equitable estoppel in the disposition of the controversy.

ROSELLINI, C. J., OTT and HALE, JJ., and BARNETT, J. Pro Tem., concur.

June 23, 1965. Petition for rehearing denied.