[No. 37740.  Department One.  March 3, 1966.]

LARRY LADUM, *Respondent*, v. UTILITY CARTAGE, INC., *Appellant.*\*

*Terhune, Schlosstein, Riveland & Elliott (C. F. Schlosstein,* of counsel), for appellant.

*Cook, Flanagan & Berst (Robert A. Berst,* of counsel), for respondent.

OTT, J.—The sole issue raised by this appeal is whether the trial court erred in its determination that the written contract involved was ambiguous. The facts are substantially as follows:

Utility Cartage, Inc. (hereinafter referred to as the company), owns a concrete building which had been constructed in two portions. The old portion was built in 1927 (and enlarged in 1946), with concrete mullions 12 inches wide and 8 inches thick, approximately 20 feet apart, which ex-

\*Reported in 411 P.2d 868.

tended perpendicularly from the base of the building to within 1 foot of the top. Superimposed and centered on each mullion was a 4 inch square concrete fin that extended the full length of the mullion. Concrete window sills extended outward from the concrete walls. This portion of the building was finished with stucco. The new portion was constructed in 1956 with similar concrete mullions, but without the concrete fins or protruding decorative concrete window sills, and had a smooth concrete finish.

Over the years, the stucco on the old part of the building had deteriorated and become unsightly, and the company desired to have the stucco, fins, and sills removed, and the building refinished to match the design and finish of the new structure. The company's architect prepared drawings and specifications for this purpose, which were designated as Job No. 160, Drawing Sheet No. A-1.

Mr. J. W. Brooke, president of the company, requested Larry Ladum, doing business as Sahara Waterproofing Company (hereinafter referred to as Ladum), to submit a bid upon the proposed demolition and repair work.

December 9, 1960, after considering the drawings and specifications prepared by the architect, Ladum submitted an itemized bid which detailed the "Scope of the work" and the cost as follows:

| | |
|---|---|
| A—Removal of Stucco | |
| West Elevation | $1,090.00 |
| South Elevation | 678.00 |
| B—Removal of Mullions | |
| West Elevation | 696.00 |
| South Elevation | 407.00 |
| C—Removal of Sills | |
| West Elevation | $1,378.00 |
| South Elevation | 490.00 |
| D—Repair to Mullions | |
| West Elevation | 200.00 |
| South Elevation | 200.00 |
| E—Repair to Sills | |
| West Elevation | 829.00 |
| South Elevation | 316.00 |
| Total for all work specified above | $6,283.50* [sic] |

*The cost figures on the repair to the wall surface after removal of stucco, installation of concrete block and the wall finish will be submitted after a review of the wall area.* (Italics ours.)

The work encompassed in items B and D, *supra,* was detailed in the bid as follows:

B. Removal of Mullion
  Area: As stated above.
  1. Remove mullions with jack hammers and chipping guns slightly concave to the wall contour.
  2. Precautions to be taken as outlined in "A" above.
  . . . .

D. Repair to Mullions
  Area: As stated above.
  1. After cutting mullions slightly concave, wire brush with power tools to remove loose and foreign material.
  2. Prime areas to be worked with bonding agent to insure proper adhesion to the surface.
  3. Apply a well balanced, non-shrink waterproof concrete mortar material built up to match the existing contours of the wall.
  4. After initial set, sack out to produce a smooth uniform finish, feathered into the adjacent surfaces.
  5. Tool areas neatly and cure as necessary.

Subsequently, the architect prepared a second drawing, also designated as Job No. 160, Sheet No. A-1, which, in addition to the drawings showing the details of the demolition work on the south and west elevations, contained the following specifications pertinent to this review:

No. 2. Demolition
Remove all cement stucco on west & south elevations by approved practices, using chipping tools & hammers.
Remove all conc. fins on horizontal structural spandrel beams and on vertical mullions.
Vertical mullions between window to remain in place to receive future conc. filler walls.
Cut concave recess into face of spandrels & mullions to receive finish. See detail of mullions.
Repair all damage to exist. mullions incident to this work.

Window sills. Remove projections & finish flush with wall. Cut back into sill ledge 3″ to 6″ or as required. Build forms & cast new conc. sills flush with walls. After mortar sets remove forms & finish to wall contours.

No. 3. Repairs & finishing

After cutting conc. surfaces, wire brush with power tools & remove all loose & foreign materials.

Prime areas to be worked with approved agents to insure proper adhesion to the surface.

Apply a well balanced, non-shrink waterproof conc. mortar material built up to match existing contours.

After initial set, sack out to produce a smooth uniform finish, feathered into adjacent surfaces.

Tool areas neatly and cure as necessary.

December 19, 1960, the company entered into a written contract with Ladum for the "Maintenance and Repair to Exterior of Concrete Building as shown on the drawings and described in the specifications" prepared by the architect (Job No. 160, Sheet No. A-1), for which work the company agreed to pay Ladum the sum of $6,283.

During the demolition, Ladum performed additional work at an agreed price of $265. The total cost of the demolition, including tax, was $6,809.92.

March 28, 1961, Ladum's work on the building had progressed sufficiently to enable him to submit his proposal for the cost of refinishing the entire wall area of the old building. In conformity with a request from the company, Ladum also included in his bid the cost for additional work consisting of the removal of 29 windows from the old structure, filling in the window spaces with concrete, and finishing the repaired window spaces with gunite.

Ladum's bid was rejected by the company. The contract for removal of the windows and guniting the repaired window spaces was awarded to Bartrand Construction Company for $3,216. The guniting portion of this contract was sublet to Ladum.

During the course of the work on the demolition contract, the company paid Ladum the sum of $3,120. June 30, 1961, Ladum completed the demolition portion of his contract. September 1, October 3, November 2, and December 5, 1961,

Ladum billed the company for the balance due on the contract. Thereafter, the company paid Ladum $2,600, leaving a balance of $1,089.92.

After completing the demolition work, and the guniting required under the Bartrand subcontract, Ladum applied gunite to the entire wall area of the old building. This finish did not meet with the approval of the company, and thereafter Ladum covered the walls of the old building with two coats of concrete plaster, as directed by the company.

When the company refused to pay the balance due on the written demolition contract, and for the refinishing of the entire old portion of the building with gunite and 2 coats of plaster, Ladum filed a labor and materialman's lien upon the property in the sum of $9,059.11. Ladum commenced this action to foreclose the lien and recover the amount due.

The company answered the complaint, alleging that the written contract encompassed the demolition and the refinishing of the building for the sum of $6,283, plus $265 for additional work, and, by cross complaint, alleged that the work was done in an unworkmanlike manner, to its damage in the sum of $11,414.36.

The cause was tried to the court, which determined that the written contract was for the removal of the stucco, fins, sills, and repair to the sills and mullions of the building; that the parties had entered into an oral agreement for the refinishing work, and that a reasonable award for the refinishing work was $7,874.67.

From the judgment in favor of Ladum in the sum of $8,223.95, the company has appealed.

The company's first assignment of error is that the court erred in entering judgment against the company and in favor of Ladum.

The trial court entered findings of fact as follows:

That plaintiff [Ladum] and defendant [company] entered into a contract for the removal of the stucco, the removal of the fins from the mullions and repair to the mullions, removal of the trim upon the sills and repair

to the sills. That said contract consisted of three documents, a proposal submitted by plaintiff dated December 9, 1960, Exhibit 3, the agreement and general conditions dated December 19, 1960, Exhibit 2, and the plans and specifications dated December 19, 1960, Exhibit 5. That the agreement and general conditions, and plans and specifications, when considered separate and apart from the proposal submitted by plaintiff, are ambiguous as to the scope of the work to be performed. That all three of the aforementioned documents, when considered together, are clear and unambiguous as to the scope of the work to be performed by plaintiff. That it was understood by the parties at the time of the execution of the contract, and confirmed by their later words and actions, that the type of surfacing to be applied to the old portion of the building would be determined after the removal of the stucco. Finding of Fact No. 3.

That in March, 1960, and in May, 1960, after all or part of the stucco was removed, plaintiff's employees discussed the various methods of surfacing the building with J. W. Brooke, and defendant's architect, George Groves. Defendant's architect requested that plaintiff submit a proposal for the surfacing. A proposal was prepared by plaintiff and submitted to defendant's architect on March 28, 1961, Exhibit 10 herein. That this proposal was not accepted by defendant. That the removal of the stucco, removal of the fins on the mullions, removal of trim on the sills, and repair to mullions and sills was completed on or before June 30, 1961. That the amount due upon the contract for said work at that time was the sum of $1,089.92. Finding of Fact No. 4.

That after the removal of the stucco, and repair to the mullions and sills, the parties discussed the use of "gunite" for exterior surfacing. The application of "gunite" was demonstrated to J. W. Brooke and the architect by means of a test sample. The defendant's architect instructed plaintiff to proceed with a surface material using a "gunite" method of application. That at all times herein, J. W. Brooke worked closely with his architect, reviewing all decisions to be made. Mr. Brooke was present on the job every day and looked at the progress of the work several times each day. That at no time during the progress of the surfacing of the building did Mr. Brooke or the architect request that plaintiff cease performing the work. After completion of the "gunite" application on the entire building, J. W. Brooke and the architect be-

came dissatisfied with the surface left by this application. Mr. Brooke then instructed plaintiff to proceed with additional surface coats upon the building. Plaintiff then applied a plaster coat of concrete, and two grout coats to the entire surface of the old portion of the building. Finding of Fact No. 5.

That the work done subsequent to June 30, 1961, was not a part of the original contract. That the work done after June 30, 1961, consisted of the application of surfacing materials to the exterior of the building. That the architect, George Groves, was the authorized representative and agent of defendant as to all work done after said date. That all work done after June 30, 1961, including the surfacing job, constituted a new and separate contract. Finding of Fact No. 6.

That the work performed by plaintiff was done in a good and workmanlike manner. The appearance of the old portion of the building is consistent with the appearance of the new portion. That plaintiff ceased performing work upon the building on December 6, 1961. That the time and materials for the surfacing of the building totalled $6,057.45, and that said amount is reasonable. That a reasonable amount to be allowed for overhead is 15%, $908.61, and a reasonable amount to be allowed for profit is 10%, $605.74. That the sales tax on said total is $302.87. That the total amount due for the surfacing of the building is $7,874.67. Finding of Fact No. 7.

█ The record sustains the trial court's findings of fact, and we will not disturb them. *Wells & Wade Hardware, Inc. v. Wenatchee,* 64 Wn.2d 103, 104, 390 P.2d 701 (1964), and cases cited.

The company next contends that the trial court erred in its determination that the contract was ambiguous, and in considering parol evidence to determine the scope of the contract.

█ It is the general rule that the determination of whether a written instrument is ambiguous is a question of law for the court. *State Bank of Wilbur v. Phillips,* 11 Wn.2d 483, 119 P.2d 664 (1941); *Durand v. Heney,* 33 Wash. 38, 73 Pac. 775 (1903). We have further held that, in construing contracts, words are to be given their ordinary and

usual meaning. *Miller v. Allstate Ins. Co.,* 66 Wn.2d 871, 405 P.2d 712 (1965).

■ Webster's New International Dictionary (2d ed.) defines ambiguous as "Capable of being understood in either of two or more possible senses."

We have approved the definition of ambiguity as "an uncertainty of meaning in the terms of a written instrument." *State Bank of Wilbur v. Phillips, supra,* at 488.

Applying these rules and definitions to the instant case, the ambiguity, if any, arises in connection with the "Scope of the Work" detailed in the written contract, and whether it encompassed refinishing the wall area of the old building. The scope of the refinishing work was defined only in specification No. 3, Job No. 160, Sheet No. A-1, *supra.*

The company contends that specification No. 3 is susceptible of only one interpretation, namely, that the entire surface from which stucco had been removed by Ladum was to be refinished to match the new building, as well as refinishing and repairing the mullions and window sills.

Ladum contends that specification No. 3 refers only to repairs and refinishing in preparation for the final refinishing process, after the demolition and stucco removal had been completed.

The trial court, in applying the rules above announced to the issue presented, concluded that the contract was susceptible of two or more meanings and was, therefore, ambiguous.

After the court made its legal determination that the contract was ambiguous, it considered extrinsic evidence to resolve the ambiguity. The limited bid submitted by Ladum on December 9, 1960, expressly did not include the refinishing work on the wall area. The consideration in the written contract was within 50 cents of the amount of Ladum's limited bid. No reasonable explanation was advanced by the company to sustain its contention that the refinishing work (the reasonable cost of which exceeded the amount of the demolition bid) was subsequently included in the written contract without increasing the amount to be paid to Ladum.

Further, the language in item D, *supra,* of Ladum's limited bid (which specifically did not include the refinishing work on the wall area) was adopted nearly verbatim in specification No. 3, *supra,* of the written contract. Since the details in item D of Ladum's limited bid did not include the "wall finish," it follows that specification No. 3 of the contract, being in the same language, likewise did not encompass it.

■ The trial court did not err in its determination that the contract was ambiguous, and extrinsic evidence may be considered to resolve an ambiguity. *Hastings v. Continental Food Sales,* 60 Wn.2d 820, 376 P.2d 436 (1962); *State Bank of Wilbur v. Phillips, supra.*

We find no merit in the company's remaining assignments of error.

The judgment is affirmed.

DONWORTH, FINLEY, and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.