[No. 134-41312-3.    Division Three.    September 17, 1970.]

WILLIAMS FRUIT COMPANY, *Appellant*, v. HANOVER INSURANCE COMPANY *et al.*, *Defendants*, ROSS DENT INSURANCE AGENCY, INC., *et al.*, *Respondents*.

*Irwin, Friel & Myklebust* and *Kenneth Myklebust* (*Philip E. Peterson*, of counsel), for appellant.

*Thomas B. Grahn* (of *Halverson, Applegate, McDonald, Bond & Grahn*), for respondents.

GREEN, J.—Plaintiff, Williams Fruit Company, brought this action against defendants, Ross Dent Insurance Agency, Inc., Raymond C. Shields, an officer and agent, and eight insurance companies, to recover $32,450.36. Plaintiff appeals from a dismissal entered at the close of plaintiff's case. All appeals against the insurance companies were voluntarily dismissed, leaving only Shields and the Ross Dent Insurance Agency as defendants.

The evidence most favorable to plaintiff shows for over 30 years it procured provisional insurance through defendants, providing for fluctuating coverage varying with plaintiff's seasonal requirements. The policy here involved

provided that plaintiff prepare and file monthly reports showing the total value of all insured assets on hand as of the last day of each month.[1] The report was delivered to the defendants and forwarded by them to one of the insurance filing companies. Although an initial premium was paid at the beginning of each year, the actual amount of premium was computed at the end of each year based upon the average of reported monthly values. When a fire loss occurred, the amount of coverage was based upon the value of the insured assets reported at the end of the preceding month, adjusted by increases or decreases in inventories between the date of such report and the date of the loss.[2]  The provisional insurance report for the month end-

---

[1]Printed on the reverse side of the report form was a Guide For Reporting Values and in part said:

1. WHEN TO REPORT: Unless otherwise specifically provided by a written endorsement, reports should be made up as of the close of business on the last day of each calendar month and are required to be filed within 30 days thereafter. Failure to comply with this requirement can result in under-insurance.

2. MAKE-UP OF VALUES: You should report values in keeping with the full reporting clause in the form attached to your policy. In determining what items are to be included, in addition to your merchandise inventory, do not overlook merchandise sold but not delivered, merchandise received but not recorded (less merchandise shipped but not recorded), merchandise of others in your custody, labels, packing materials, stationery and advertising supplies. If the policy covers furniture, fixtures and incidental machinery, and improvements and betterments to buildings, their values should be included. If the values reported are less than the values at risk as of the date of the report you will be under-insured.

6. WHO SHOULD REPORT: The report should be made by you and signed by one of your responsible officials and not by your agent or broker. No agent or broker is authorized to relieve you of the responsibility for reporting values to the Company or to assume it for you. No notice respecting delinquency or deficiency in reporting is required, and no such notice shall relieve you of the consequences of your failure to comply with the reporting requirements. Acceptance of late reports will not remedy any insurance deficiency which results from your failure to report on time. The Company may examine your records. Knowledge acquired through such examination is not a substitute for the reports you are required to file.

[2]"10. FULL REPORTING CLAUSE: Liability under this policy shall not in any case exceed that proportion of any loss hereunder  .  .  . which the last value reported to this Company prior to the loss,

ing July 31 was prepared, signed and delivered to defendants by Lewis Martin, plaintiff's bookkeeper for 17 years. On August 15, 1965, Martin retired. Prior to Martin's retirement, Roger Williams, plaintiff's president, requested that he instruct his replacement, Alyce Miller, a general office clerk, as to procedures in all matters. Williams never determined whether Martin carried out his request; however, the record shows he failed to tell Mrs. Miller anything about the monthly reports. As a result, no reports were filed by plaintiff for the months of August and September. On October 12, 1965, defendant agency wrote plaintiff that the reports for those months had not been received. Upon receipt of the letter, Williams called Shields and told him Mrs. Miller had just taken over the former bookkeeper's duties; that he knew nothing of the mechanics of reporting; that Mrs. Miller would be making the reports; and she needed instruction on how to fill them out. There was a 3-way telephone conversation between Shields, Williams and Mrs. Miller relative to the required reports. Shields suggested and the parties discussed reporting the value of all loose fruit on hand on a packed-box basis. Williams then withdrew from the conversation and Shields and Mrs. Miller discussed the other items on the report, including the reporting of supplies. Because Mrs. Miller wanted the reports to be correct, she requested Shields to check them on receipt. She did not remember his exact response but recalls he assured her he would watch them. (It is noted the report provides only for total value without a breakdown of individual items.)

The August report was prepared by Mrs. Miller, using the same values reported by Martin for July. According to Mrs. Miller's testimony, this report reflected no fruit and $9,570 worth of packing supplies. No fruit was on hand. In preparing the report for September, October and November, Mrs. Miller used the method suggested by Shields,

---

. . . bears to the total actual cash value of the property hereinbefore described, . . . actually in force . . . at the time of such report."

converting loose to packed fruit. The testimony indicates that Mrs. Miller committed a mistake in the September report by computing the value of fruit on the basis of packing costs only, at $1.85 per box, but failed to include the value of the fruit itself. This resulted in understating the true value by $50,000 or more. Also, a $34,000 mistake was made on the October report. These errors were not discovered until after the fire loss.

Mrs. Miller prepared and sent the November report to defendants on December 13. In looking over the report, Shields noted the figures on the provisional fire report were the same as those reported for October and the fire report was about the same as the refrigeration report. Ordinarily, it exceeded the refrigeration report. He telephoned Williams and told him an error must have occurred; Williams replied, "Why don't you come out and straighten this out?" or "Will you come out then and help Alyce arrive at a correct report?" Shields testified he replied, "I would be glad to come out." Williams testified he said, "Okay, I'll come out."

On December 14, Shields went to plaintiff's warehouse where he spent 30 to 45 minutes with Mrs. Miller. They examined the worksheet for the month of November and found "nothing wrong with it." Source records for the worksheet were not examined. When Shields compared the figure on the worksheet with the amount shown on the November report form, it was discovered that Mrs. Miller had erroneously copied $87,750 from the October report instead of $99,082.32 computed on the November worksheet. This explained the similarity of the two reports. Shields then asked if the office supplies spread about the room were included in the report and when he found they were not, he suggested she add $1,000 for them. These two corrections increased the reported values about $12,000. No discussions occurred as to packing supplies, the conversion procedure recommended by Shields, or the date of the figures reflected on the undated worksheet. Before departing, Shields suggested Mrs. Miller correct the November report.

She immediately did so and presented it to Williams who signed without question. (Williams knew Shields had been to the warehouse and helped Mrs. Miller with it.) Thereafter, Shields received the corrected report and forwarded it to the insurance filing company.

On December 19, 1965, plaintiff's warehouse and contents burned. Thereafter, the insurance company conducted an audit of the November report and discovered that in preparing her November worksheet on December 13, Mrs. Miller used the quantities of fruit on hand as of that date rather than the correct date of November 30 required by the policy. Because a substantial quantity of fruit had been shipped out by plaintiff between the two dates, there was a substantial under-reporting discovered by no one until after the December loss. In addition, it was discovered that except for the August report, plaintiff never reported the value of on-hand packing supplies. This combination of errors resulted in the uninsured loss of $32,950.36.

The claim that defendants are liable for the under-reported values is based on two theories, either: (a) breach of contract; or (b) negligence. These contentions were fully argued to the trial court and rejected by it when defendants moved to dismiss at the close of plaintiff's case.

First, plaintiff contends the trial court erred in refusing to submit its contractual theory of liability to the jury. It is plaintiff's position that defendants expressly promised to instruct Mrs. Miller on the preparation of reports and to check the submitted reports for error; and that defendants after questioning the accuracy of the November report agreed to "come out and straighten plaintiff out." Plaintiff contends consideration for such agreement was the continued writing of plaintiff's future insurance policies. The trial court concluded the contractual theory should not go to the jury because there was insufficient evidence from which a jury could find that such agreement, assuming it existed, was supported by consideration. In reaching this conclusion, the trial judge in his oral decision said:

I have searched this record, my notes and my memory, and of course there is no precise testimony or evidence regarding consideration here. The most that can be said is that Mr. Shields—I have assumed that if he offered help in the instance requested that because of this he would be able to write these policies in the future; this in face of the fact of course that for many years without Mr. Shields agreeing to do anything such as he agreed to do here, these policies were written.

It is apparent too from the record that there is no evidence here that Mr. Shields had any assurance that if he did as he was requested to do on this occasion that in the future he would be able to write these policies and get the premiums and commissions. There was no testimony that the court heard to the effect of any agreement that was binding on the plaintiff here that if Mr. Shields so acted, they would be bound to continue to write policies in the future. As a matter of fact I find nothing here which would prevent the plaintiff the next year or the year following that from having some other agent or agency write the policies if they found there was a benefit to be had either in the coverage provisions or a savings to be made in the premium.

With these conclusions we agree.

■ It is well settled that before any act or promise or forbearance can constitute a consideration, it must be bargained for and given in exchange for the promise. Restatement of Contracts § 75 (1932); *Snyder v. Roberts,* 45 Wn.2d 865, 869, 278 P.2d 348, 52 A.L.R.2d 631 (1955); *Northern State Constr. Co. v. Robbins,* 76 Wn.2d 357, 361, 457 P.2d 187 (1969). The record is clear the matter of future insurance was never discussed; in these circumstances it was not "bargained for."

■ Plaintiff contends even if there was no "bargained for" consideration, defendants are liable under the doctrine of promissory estoppel. The prerequisites to the application of this doctrine are:

(1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a man-

ner that (5) injustice can be avoided only by enforcement of the promise.

*Hill v. Corbett,* 33 Wn.2d 219, 222, 204 P.2d 845 (1949); *Northern State Constr. Co. v. Robbins, supra,* at 361. Plaintiff argues that it made an erroneous report which it could have corrected; that defendants promised to "straighten plaintiff out"; that plaintiff relied on this promise and did nothing further to correct its own report; that plaintiff's loss is a direct result of the failure of defendants to locate all of the errors in the November report. We do not agree. Shields' visit revealed two errors, increasing the November report by $12,000. The discovery of these errors satisfied Shields' initial inquiry about a possible error. Mrs. Miller knew Shields did not audit the November report or worksheet by verifying each figure, but rather only examined the figures she had placed on the worksheet and the reports. Furthermore, an audit was never discussed between Williams and Shields. To complete an audit to insure a correct report meant consulting him as to the values to be placed on fruit. Shields did none of these things. This was evident not only to Mrs. Miller, but should have been evident to Williams since Shields made no inquiry of him. Moreover, plaintiff in its policy and on the reverse side of the monthly report form was instructed in writing to make its reports effective on the last day of each month and that packing supplies, labels, etc. were to be included in the values. The latter was additionally evident from the last report filed by Mr. Martin and copied by Mrs. Miller on her first report. Further, both Mrs. Miller and Williams knew end-of-the-month figures were to be used on the report and should include packing supplies. From the evidence it is clear Mrs. Miller was properly instructed; she simply committed error in carrying out those instructions. The evidence fails to establish the prerequisites of promissory estoppel.

■ Second, plaintiff contends the trial court erred in refusing to submit to the jury the issue of defendant's negligence in performing the duty of accurately correcting

the November report. This contention is grounded upon Shields' alleged failure to properly instruct Mrs. Miller as to the preparation of reports and thereafter to inquire as to whether the November report was as of the last day of November and whether it included packing supplies. Mrs. Miller already knew the report should have been rendered effective on the last day of November; she did so previously. Additionally, the report form indicated not only this fact, but that the value of packing supplies should be included. Mrs. Miller's own testimony indicates she was so instructed by Shields. Without discussing whether the defendants were negligent in failing to discover the mistake or error of Mrs. Miller, it is clear that but for the negligence of plaintiff's employee the error would not have occurred. Plaintiff is bound by the negligence of its employee occurring within the scope of her employment. Such negligence is a complete defense to any claim of negligence asserted against defendants. In view of this holding, it is unnecessary to discuss whether an issue was presented as to defendants' negligence. We observe, however, that the duty allegedly assumed by defendants is so vague that we seriously doubt such an issue was created.

In view of our disposition of plaintiff's theories of contract and negligence, it is unnecessary to discuss plaintiff's other assignments of error.

Judgment affirmed.

EVANS, C. J., and MUNSON, J., concur.

Petition for rehearing denied October 6, 1970.

Review denied by Supreme Court October 28, 1970.