[No. 339-3. Division Three. January 18, 1972.]

JOHN W. NASHEM, *Respondent*, v. DALE JACOBSON *et al.*, *Appellants*, JOHN W. NASHEM *et al.*, *Respondents*.

*Thomas F. Paul* (of *Howard, LeGros, Buchanan & Paul*), for appellants.

*Don W. Schussler* (of *Nashem, Prediletto & Brooks*), for respondents.

MUNSON, C.J.—Defendants, Dale and Myron Jacobson, their respective marital communities, and Garden City Fur-

niture, Inc., appeal from an adverse judgment based upon an order granting summary judgment. We affirm in part and reverse in part.

The major question presented for our consideration is whether the trial court erred as a matter of law in granting summary judgment based upon an interpretation of a contract. We answer in the negative.

The inventory of Nashem's, Inc. (Nashem's), a Yakima furniture store, was sold to John Nashem (plaintiff), president of said corporation, who in turn conveyed same to Garden City Furniture, Inc. (buyer). The Jacobsons are the principal stockholders of buyer. By the terms of the agreement, dated October 10, 1968, buyer agreed to pay in its corporate shares a price based upon value of the inventory plus the book value of the fixtures, less Nashem's accounts payable, which buyer assumed. The agreed value per share of buyer's stock was $100. After appropriate computations, plaintiff received 326 shares of stock. The sale agreement further provided:

> Dale Jacobson and Myron Jacobson, individually and jointly agree to purchase from JOHN W. NASHEM all of the stock issued to JOHN W. NASHEM in GARDEN CITY FURNITURE, INC., for cash at the rate of $100.00 per share plus accrued earnings at any time before the close of the next fiscal year of GARDEN CITY FURNITURE, INC., a corporation, namely, March 31, 1970. Thereafter, in the event Seller should decide to sell or offer for sale the stock issued to him in payment of the purchase price, the then existing stockholders of Buyer shall have the right of first refusal to purchase all of said stock at the price of $100.00 per share.

It was also agreed plaintiff was to be employed by buyer as co-manager of its Yakima operation, to be operated under the assumed name of "Crossroads Interiors".

Contemporaneous with the sale-employment agreement was a lease of the building owned by Nashem's to buyer for a 5-year period and from which buyer would operate "Crossroads Interiors".

Approximately 1 year after the agreement, but prior to

March 31, 1970, plaintiff terminated his employment with buyer. Buyer then ceased its Yakima operation and gave notice of termination of the lease. Plaintiff attempted to exercise his rights under the stock purchase portion of the sale agreement but the Jacobsons denied any responsibility thereunder.

Plaintiff brought suit to enforce the sale-employment agreement alleging: (1) paragraph 5 thereof wherein the Jacobsons agreed to purchase plaintiff's corporate shares and their refusal to do so, and (2) buyer's failure to comply with the salary provisions thereof. Defendants denied plaintiff's claim and counterclaimed against plaintiff and his marital community alleging damages arising from plaintiff's breach of the terms of his employment relative to his co-managerial and fiduciary duties. Defendants further complained against (1) plaintiff's parents, Norman R. Nashem, Sr., and wife, for damages allegedly arising out of the former's employment in the Yakima store, and (2) Nashem's for alleged breach of the lease by plaintiff's termination of his employment and the lease. All "defendants" to defendants' counterclaims denied the allegations and Nashem's counterclaimed against buyer for rent due under the lease and for fees it incurred in reletting the building. Buyer and the Jacobsons denied any liability therefor and alleged plaintiff terminated the lease at the time he terminated his employment.

Plaintiff moved for summary judgment on his claim regarding the stock purchase, salary claim and dismissal of defendants' counterclaims. Nashem's sought summary judgment on their claim for rent and reletting expenses and dismissal of defendants' counterclaims. Defendants moved for summary judgment on plaintiff's claim for salary.

Initially the trial court orally denied plaintiff's and Nashem's motions for summary judgment reserving, however, the right to consider the pleadings, affidavits, answers to interrogatories and depositions submitted therewith but granted defendants' motion with regard to plaintiff's salary claim. Subsequently the trial court, having read the docu-

mentation presented by all parties, reconsidered plaintiff's motion for summary judgment and granted it with respect to the stock purchase agreement and Nashem's motion with respect to rent and rental expenses; however, it denied plaintiff's claim for dismissal of defendants' counterclaim for mismanagement by plaintiff and set same for trial along with defendants' claim against plaintiff's parents.

When the trial court granted plaintiff's motion for summary judgment it found no just reason for delay in entering a judgment thereon existed and did so establishing plaintiff's claim for his stock and Nashem's claim for rent and expenses. CR 54(b). Thus, the appeal relative thereto comes properly before us. See *Manion v. Pardee,* 79 Wn.2d 1, 482 P.2d 767 (1971); *Crosthwaite v. Crosthwaite,* 56 Wn.2d 838, 358 P.2d 978 (1960).

While at first blush it may appear odd the trial court ordered the Jacobsons to pay plaintiff for his stock when the dispute involved the interpretation of a contract, the propriety of the court's action is seen when the rules regarding the interpretation of contracts are examined and applied to the instant case.

■ While the primary purpose of any judicial interpretation is to ascertain the parties' intentions, *Grant County Const'rs v. E. V. Lane Corp.,* 77 Wn.2d 110, 120-21, 459 P.2d 947 (1969), 3 Corbin on Contracts § 534 at 9 (1960), the trial court should first determine if the parties intended the writing to be a complete and accurate integration of the terms they mutually arrived at during negotiation. *Dix Steel Co. v. Miles Constr., Inc.,* 74 Wn.2d 114, 118, 443 P.2d 532 (1968). It is possible a writing is merely a part of the total contract and there is a collateral agreement which completes it, *i.e.,* partial integration of the written contract. In such an event the latter may be proved by extrinsic evidence insofar as it is not inconsistent with the writing. *Black v. Evergreen Land Dev., Inc.,* 75 Wn.2d 241, 248-49, 450 P.2d 470 (1969).

In the instant case, however, there is no contention that a collateral agreement existed. Rather, defendants allege the

language of paragraph 5 set forth above is at best ambiguous and, further, does not set forth "what" the parties intended. Therefore, we must next consider whether paragraph 5 is (a) ambiguous, or (b) clearly expressive of the intent of the parties.

As to (a), if the paragraph is ambiguous, and contradictory evidence is introduced to clarify the ambiguity, a question of fact is created which may not be resolved on summary judgment. *Balise v. Underwood,* 62 Wn.2d 195, 199-200, 381 P.2d 966 (1963). Although the trial court in its order on summary judgment found that paragraph 5 of the agreement was patently ambiguous, it did not identify the ambiguity but, after considering all the material relative to the various motions, found no genuine issue of material fact existed and granted plaintiff's motion. If there was an ambiguity, the trial court should have identified it and denied the motion. An ambiguity exists when there is uncertainty in the meaning of the terms of a written instrument and, therefore, the terms are capable of being understood in two or more senses. *Ladum v. Utility Cartage, Inc.,* 68 Wn.2d 109, 116, 411 P.2d 868 (1966). We find paragraph 5 clear and unambiguous not only when considered separately, but also when considered in light of the entire agreement.

As to (b), the Jacobsons contend paragraph 5 does not contain the agreement of the parties, *i.e.,* the provision is to be operative only in the event plaintiff's employment is voluntarily terminated by buyer. Plaintiff obtained his stock in lieu of money from defendants when the latter purchased the furniture business. As far as we can glean from the record, no money exchanged hands save rental payments under the contemporaneous lease. The parties agree some provision had to be considered for the possibility of plaintiff receiving money from the sale since the parties had never been business associates before and did not know how compatible their interests and personalities were.

The Jacobsons contend paragraph 5 was inserted to

cover the eventuality of involuntary termination. This position overlooks the balance of the paragraph pertaining to the status of the parties after March 31, 1970 which militates against such contention. After that date the stockholders of buyer, persons in addition to the Jacobsons, had the right of first refusal at the price of $100 per share. Thus, prior to March 31, 1970 plaintiff could get cashed out. Thereafter, he took his chances relative to the stock value, i.e., the shareholders of buyer lose nothing and potentially benefit by the provisions of the paragraph, whether the value of the shares increased or decreased after that date. The Jacobsons' agreement to purchase plaintiff's stock amounts to an offer to buy extended for a definite period of time and requires only acceptance by plaintiff. *Warner Bros. Pictures, Inc. v. Brodel,* 179 P.2d 57, 67 (Cal. Dist. Ct. App. 1947); *Marshall v. Old,* 14 Colo. App. 32, 59 P. 217, 218 (1899). Plaintiff accepted.

 Nothing in paragraph 5, separately or when read in light of the entire agreement, expressly or implicitly alludes to plaintiff's employment or the termination thereof as a triggering event for the creation of the Jacobsons' obligation. To adopt the Jacobsons' position would be to use parol evidence to vary, contradict or alter the terms of the instrument, which cannot be done.

While the contract was prepared by plaintiff's attorney, it was delivered to the Jacobsons who had ample opportunity to examine all of its provisions prior to execution. As stated in *Coast Sash & Door Co. v. Strom Constr. Co.,* 65 Wn.2d 279, 282, 396 P.2d 803 (1964):

> It is not the function of the courts to write into a contract provisions which the parties, in "insisting upon their rights," did not incorporate therein when the subject matter was being considered and agreed upon prior to executing the contract.

We affirm the trial court insofar as its judgment requires the Jacobsons to purchase the stock.

In light of this holding, we find no merit in defendants'

contention that they should be allowed to depose plaintiff's attorney.

With respect to the portion of the judgment that defendants pay to Nashem's rent and a portion of the reletting costs, we find there is an issue of material fact presented that must be resolved by trial, *i.e.*, whether plaintiff exercised some agency for Nashem's and terminated the lease and/or plaintiff's alleged managerial misconduct relieved defendants' obligation thereunder. This issue should be tried at the same time as other portions of the original claim are presently set.

Therefore, that portion of the judgment relating to the lease and costs incurred in reletting is reversed and the case is remanded to the trial court for action in accordance with this opinion.

GREEN and EVANS, JJ., concur.

Petition for rehearing denied February 22, 1972.