[No. 908-1.  Division One—Panel 1.  April 24, 1972.]

PEOPLES MORTGAGE COMPANY, *Appellant,* v. VISTA VIEW BUILDERS *et al., Defendants,* SEA-TAC ASPHALT COMPANY, *Respondent.*

*Macbride, Sax & MacIver, James L. Magee,* and *John L. Patterson,* for appellant.

*James R. Young,* for respondent.

HOROWITZ, C.J.—Respondent, Sea-Tac Asphalt Company, obtained a summary judgment for breach of contract against Peoples Mortgage Company. The latter appeals. The sole question presented is whether the record shows there are genuine issues of material fact precluding entry of the judgment appealed from.

In stating the facts, we shall assume, as do the parties, that the affidavits relied on by each comply with the requirements of CR 56(e). The record on which Sea-Tac's motion for summary judgment is based shows the following. Prior to September 18, 1969, Vista View Builders arranged to borrow money from Peoples with which to pay for plat development improvements on its Twin Creeks plat. Whether the arrangement was oral or in writing does not appear. On September 18, 1969, Sea-Tac entered into a written contract with Vista View to install asphaltic con-

crete paving on the roads of that plat. Sea-Tac's contract made no provision either for direct payment of the contract price by Peoples, or for any guarantee by Peoples of any such payment. Sea-Tac completed its work on December 3, 1969. There is no showing, unless it be by possible inference, that Vista View accepted Sea-Tac's performance as constituting satisfactory completion of the latter's paving contract obligations.

On December 29, 1969, Sea-Tac's vice-president wrote to Peoples' vice-president, Keith R. Green, as follows:

> Reference is made to the conversations between you and Mrs. Rinker of this office.
>
> It is our understanding that you have on deposit with your company funds in excess of $20,000.00, that are to be used for the sole purpose of paying for the work as outlined in our contract with Vista View Builders and that any liens against the project will not affect the payment of these funds.
>
> It is further understood that you will pay for this work with a check made jointly to Vista View Builders and Sea-Tac Asphalt Co., upon acceptance of the work that we have performed.

A legend in the lower left-hand corner of the letter read: "Approved as stated above," with a line below for Mr. Green's signature. Green did not sign his name under the legend. Instead, he wrote Sea-Tac on December 31, 1969, stating:

> In reply to your letter of December 29, 1969, we are in a position to inform you that we have on deposit funds in excess of $20,000, which have been earmarked for plat development in the plat of Twin Creeks, which is being developed by Vista View Builders. We will be in a position to disburse these and other funds upon receiving written instructions to disburse from the King County Engineer's Department.
>
> At this time I would prefer not to make any commitment as to a joint payable check unless I am so authorized by our customer, Vista View Builders.

About June 12, 1970, Sea-Tac obtained a letter from the Department of Public Works, King County, Washington

(formerly King County Engineer), concerning the Twin Creeks plat. The letter reads:

Please be advised that the asphaltic concrete paving in subject plat is within the tolerance of King County Standards.

Sea-Tac apparently demanded that Peoples pay it the unpaid paving contract price owed by Vista View upon completion of performance by Sea-Tac. Peoples refused.

Peoples later sued Vista View and others, including Sea-Tac, an unpaid lien claimant under its paving contract with Vista View, to foreclose 27 deeds of trust. Sea-Tac then filed its answer claiming affirmative relief based on an alleged "letter of guaranty and agreement to pay to the defendant Sea-Tac Asphalt Co., all sum [sic] necessary to provide for the asphalt paving on the Twin Creeks Plat . . ." It is further alleged that "all conditions of said letter of guaranty have been met except the obligation of plaintiff to pay defendant Sea-Tac . . ." The letter of guarantee referred to appears to have been the Green letter of December 31, 1969. Subsequently, Sea-Tac filed a motion for summary judgment against Peoples supported by an affidavit setting forth copies of the letters above quoted. The motion sought to recover judgment for the unpaid paving contract price previously demanded. Sea-Tac's motion was granted and this appeal followed.

■■ Sea-Tac, to succeed on its claim for relief, had the burden of proving the allegations of its pleading, including promise, consideration, breach and damages. The existence of promise had to be proved in order to show that Peoples and Sea-Tac had a meeting of minds, in the same sense, on all the essential terms of the promise. *See Strange & Co. v. Puget Sound Mach. Depot,* 176 Wash. 90, 98, 28 P.2d 111 (1934). The meeting of minds referred to cannot be based on unexpressed subjective intent. *J. W. Seavey Hop Corp. v. Pollock,* 20 Wn.2d 337, 147 P.2d 310 (1944). *Cf. Leonard v. Washington Employers, Inc.,* 77 Wn.2d 271, 461 P.2d 538 (1969). The meeting of minds must be based upon an objective manifestation of mutual intent on the essential

terms of the promise. *Industrial Electric-Seattle, Inc. v. Bosko,* 67 Wn.2d 783, 410 P.2d 10 (1966). *See Joseph v. Donover Co.,* 261 F.2d 812 (9th Cir. 1958).

The language of the promise may be unclear. If a court, even by resort to other provisions of the writing and to admissible parol evidence, cannot decide what the promise means, the promise is void for uncertainty. *Sandeman v. Sayres,* 50 Wn.2d 539, 314 P.2d 428 (1957). A court will not, however, lightly invalidate the promise for uncertainty. Instead, it will first seek to remove the ambiguity by resort to other provisions of the writing. *Macri v. Bergevin,* 30 Wn.2d 654, 193 P.2d 360 (1948). *See Dickson v. Hausman,* 68 Wn.2d 368, 413 P.2d 378 (1966). If the meaning is still unclear, the court may rely upon parol evidence to explain the ambiguity. It may not use such evidence to add to or change the terms of the written promise. *Macri v. Bergevin, supra.* To do so would, in effect, require the court to rewrite the promise without reformation and thereby enforce a promise the parties never made. *Citizens Nat'l Trust & Sav. Bank v. Londono,* 204 F.2d 377 (9th Cir. 1953). *See Nadreau v. Meyerotto,* 35 Wn.2d 740, 215 P.2d 681 (1950).

When there is uncertainty of meaning in the terms of the promise, the promise is ambiguous. *Ladum v. Utility Cartage, Inc.,* 68 Wn.2d 109, 411 P.2d 868 (1966); 3 A. Corbin, Contracts §§ 543A, 543B, 543C (supp. 1971).

Such uncertainty may exist with respect to the promise or the act constituting consideration "bargained for and given in exchange for the promise." *Williams Fruit Co. v. Hanover Ins. Co.,* 3 Wn. App. 276, 281, 474 P.2d 577 (1970). There also may be uncertainty as to whether the language used is any promise at all. 3A A. Corbin, Contracts § 633 (1960) states:

> One who makes a promise thereby expresses an intention that some future performance will be rendered and gives assurance of its rendition to the promisee. Whether the promise is express or implied, there must be either words or conduct by the promisor by the interpretation of which the court can discover promissory intention; a

condition is a fact or an event and is not an expression of intention or an assurance. A promise in a contract creates a legal duty in the promisor and a right in the promisee; the fact or event constituting a condition creates no right or duty and is merely a limiting or modifying factor.

In the instant case the Green letter of December 31, 1969, either contains no promise or its language is ambiguous both with respect to the existence and reach of the alleged promise and with respect to the act, the performance of which Sea-Tac claims constitutes consideration.

The phrase "We will be in a position to disburse . . ." may be merely a statement of fact or an event rather than a commitment. Green wrote the letter of December 31, 1969, in answer to Sea-Tac's letter of December 29, 1969, because he refused to be bound by the commitment contained in Sea-Tac's letter. In keeping with his unwillingness to be committed, he had added the following immediately after the "position to disburse" sentence:

At this time I would prefer not to make any commitment as to a joint payable check unless I am so authorized by our customer, Vista View Builders.

The two consecutive sentences, taken together, can be construed to mean that if Green were "in a position to disburse" he would not do so unless "I am so authorized by our customer, Vista View Builders."

In addition, the phrase describing the act, the existence of which is required, is the receipt of "written instructions to disburse from the King County Engineer's Department." The June 12, 1970 department letter, the truth of which is supported by affidavit filed in support of Sea-Tac's motion for summary judgment, is a statement that the paving is "within the tolerance of King County Standards." It is at least uncertain whether that statement constitutes "written instructions to disburse from the King County Engineer's Department." Without admissible parol evidence to show that the department's certification is such an instruction and that Peoples has authority from Vista View to treat it as such, the certification, on its face at least, is not such a

written instruction. The necessary uncontradicted parol evidence is missing here.

■ The use of parol evidence being required to explain the ambiguities that appear in the correspondence previously reviewed, the entry of summary judgment is premature. In *Peterson v. Peterson,* 66 Wn.2d 120, 401 P.2d 343 (1965), the court said:

> Where different conclusions may be reached from the undisputed facts and reasonable men might reach different conclusions, a summary judgment should not be entered.

66 Wn.2d at 124. *See also Preston v. Duncan,* 55 Wn.2d 678, 349 P.2d 605 (1960). In 6 J. Moore, Federal Practice ¶ 56.17 [43], at 2590 (2d ed. 1971), dealing with Fed. R. Civ. P. 56 from which CR 56 is taken, it is stated:

> [W]here the contract is ambiguous and there is a genuine factual issue as to its meaning, summary judgment should be denied.

*Cf. Nashem v. Jacobson,* 6 Wn. App. 363, 492 P.2d 1043 (1972).

The existence of ambiguity in the instant case is not merely a theoretical matter. Peoples has filed an affidavit of its vice-president, William E. Hart, to show that the Green letter of December 31, 1969, was not a letter of commitment. The affidavit states:

> The funds on deposit with Peoples Mortgage Company in December of 1969 were earmarked for the plat development of the Twin Creeks plat and constituted an undisbursed portion of the loan to Vista View Builders. The arrangement between Vista View Builders and Peoples Mortgage Company was that when a contractor's work was accepted by the King County Department of Public Works, Vista View Builders would draw against the funds on deposit and Peoples Mortgage Company would disburse the amount requested. It was then the responsibility of Vista View Builders to pay the contractor the amount owed. Peoples Mortgage Company has disbursed to Vista View Builders all amounts requested by and due them from said account. Vista View Builders filed bankruptcy on April 16, 1970.

The arrangement and practice described by Hart is further confirmed by the fact that Green had no authority to commit Peoples to a disbursement of funds on a basis different from the arrangement shown by the Hart affidavit. The affidavit states:

> In the course of his duties Mr. Green was not authorized to guarantee payment to contractors who were working on projects being developed by Peoples Mortgage Company loans and, in particular, was not authorized to guarantee payment to contractors who were working on the . . . Twin Creeks plat which was being developed by Vista View Builders under a loan from Peoples Mortgage Company.

Peoples further claims that the Green letter of December 31, 1969, in any event, is unenforceable because not supported by consideration. Sea-Tac claims that if consideration is necessary, Sea-Tac has furnished it by obtaining the Department of Public Works letter of June 12, 1970, previously discussed. It further claims that it need not furnish an independent consideration, first, because Peoples is a trustee of the Vista View funds, consideration neither being required to establish a trust, nor required of the beneficiary. As a trustee, it is argued, Peoples owes a duty to disburse Vista View funds to Sea-Tac as a beneficiary. *See* 1 A. Scott, The Law of Trusts § 28 (3d ed. 1967); 2 A. Scott, The Law of Trusts § 164 (3d ed. 1967). Secondly, Sea-Tac claims that no consideration need be furnished by it because Sea-Tac is a third party beneficiary of a loan arrangement between Peoples and Vista View. *See generally Gelco IVM Leasing Co. v. Alger*, 6 Wn. App. 519, 494 P.2d 501 (1972); *McDonald Constr. Co. v. Murray*, 5 Wn. App. 68, 485 P.2d 626 (1971).

■ Assuming that the application of either the first or second theories would excuse the necessity of proving consideration by Sea-Tac, undisputed evidence, not present here, is still required to show the existence of the trust or the existence of the loan arrangement making Sea-Tac a third party beneficiary. Furthermore, it is necessary to

show that the department's letter of June 12, 1970, constitutes "written instructions to disburse . . ." Under CR 56 the moving party has the burden to prove there is no genuine issue of any material fact. The trial court must consider all evidence and reasonable inferences therefrom in a manner most favorable to a nonmoving party. *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 421 P.2d 674 (1966); *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963). It is enough that the claimed promise and the sufficiency of the claimed performance each raise genuine issues of material fact. Summary judgment is premature.

The judgment is reversed.

WILLIAMS and CALLOW, JJ., concur.