[No. 9565–0–I.   Division One.   July 16, 1982.]

GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC.,
*Respondent,* v. C–3 ASSOCIATES, ET AL,
*Appellants.*

*John C. O'Rourke,* for appellants.

*Julian C. Dewell,* for respondent.

RINGOLD, J.—This declaratory judgment action was brought by General Telephone Company of the Northwest, Inc. (Northwest) against C–3 Associates (C–3), a limited partnership, and Terra Investment Company, a Washington corporation and general partner of C–3, to construe the provisions of two leases (Office Lease, Hangar Lease) in both of which Northwest is the lessee and C–3 is the

assignee of the lessor. The trial court granted Northwest's motion for summary judgment and C–3 appeals. We find no error in the trial court's decision and affirm.

### EXERCISE OF RENEWAL OPTION

The Office Lease provided, in pertinent part:

TERM

3. . . . Lessor grants to Lessee the option to renew this lease for two (2) additional one (1) year terms. . . . Written notice to exercise any option shall be given at least 30 days prior to termination of each respective term.

. . .

NOTICES

13. Any notice required to be served in accordance with the terms of this lease shall be sent by registered mail. . . .

The original 3–year term of the Office Lease was due to expire August 31, 1980. On July 30, 1980, an agent of Northwest hand delivered to the president of C–3's general partner a written notice to renew the Office Lease. On August 5, 1980, C–3 gave notice to Northwest to vacate the premises by September 1, 1980, because no renewal had been received by registered mail. The trial court ruled that Northwest properly renewed the Office Lease by hand delivery of the notice.

C–3 contends that unambiguous contracts must be enforced as written, and that under the plain language of the lease the renewal option could be exercised only by sending notice via registered mail. Generally, an option is a unilateral contract which may be accepted by the optionee only by performance in accordance with its terms. "When the optionee decides to exercise his option he must act unconditionally and precisely according to the terms of the option. . . . Nothing less will suffice unless the optionor waives one or more of the terms of the option." (Footnotes omitted.) 1 S. Williston, *Contracts* § 61D (3d ed. 1957).

The precise issue of the adequacy of an alternative mode of giving notice of renewal has never been decided in

Washington. Other courts considering this issue have held, however, that

> While it is true that there must be strict compliance with the terms of an option agreement, generally speaking any method of transmission of notice of renewal of a lease may be employed which is effective to bring such notice home to the lessor and serves the same function and purpose as the authorized method. . . . This is true although the lease requires notice to be made in a particular way. 51C C.J.S. Landlord and Tenant § 62(2)(d), and cases cited therein. Although our research has not disclosed any cases where hand–delivery of written notice is made in contrast to the method designated in the lease agreement, and the parties have not cited any, in applying the aforementioned principles we are of the opinion that the notice was sufficient.

*University Realty & Dev. Co. v. Omid–Gaf, Inc.,* 19 Ariz. App. 488, 490, 508 P.2d 747, 749 (1973) (lease required registered mail, notice hand delivered). *Accord, Fletcher v. Frisbee,* 119 N.H. 555, 404 A.2d 1106 (1979) (lease required registered mail, notice sent regular mail); *Woods v. Cities Serv. Oil Co.,* 142 So. 2d 168 (La. App. 1962) (lease required registered mail, notice sent by telegraph). In *East 82nd St. Corp. v. Rogers,* 192 A.D. 633, 183 N.Y.S. 297 (1920), the parties notified each other by ordinary mail of their mutual intent not to renew, even though the lease provided for automatic renewal if such notice was not given by registered mail. The court held the notices effective, stating

> The obvious purpose of providing for notice by registered mail was to insure the delivery of the notice and to settle any dispute that might arise between the parties as to whether or not the notice was duly received. There is no dispute that the letter of February sixth was received by defendant before March first.

*East 82nd St. Corp.,* 192 A.D. at 638–39.

The reasoning of the above cited cases is persuasive. C–3 does not dispute the fact that the notice was timely received, nor does it claim any damages arising from the hand delivery. On these undisputed facts, the Office Lease

was properly renewed.

### Monthly Rental for Renewal Term

With respect to renewal rent the Office Lease provides:

TERM

3. . . . In the event the FIRST ONE YEAR rental [*sic*] option period is exercised, the monthly rental rate shall be negotiated in good faith between the parties hereto, but in no event shall the rate be increased or decreased to an amount greater than nor less than five percent of the previous term. . . .

The corresponding provision of the Hangar Lease reads as follows:

4. . . . In the event the FIRST FIVE YEAR rental [*sic*] option period is exercised, the monthly rental rate shall be negotiated and said amount not to exceed ten percent of the original term.

The trial court ruled that the maximum new monthly rent under the Office Lease would be $997.50, 5 percent more than the old monthly rent of $950, and that since Northwest had agreed to pay the maximum amount, there was no need for negotiation. The trial court also ruled that the maximum rent under the Hangar Lease, if the renewal option were exercised, would be 10 percent more than the original monthly rent.

Under C–3's interpretation, the base for calculation of the new monthly rental should be the total rental paid during the entire 3–year and 5–year terms of the leases. C–3 argues that ambiguous terms in the leases must be strictly construed against Northwest, the party that drafted the leases, *Fuller Mkt. Basket, Inc. v. Gillingham & Jones, Inc.*, 14 Wn. App. 128, 539 P.2d 868 (1975), and that the plain language of the Office Lease requires negotiation of the new monthly rent, which may not exceed 5 percent of the "previous term." C–3 contends that the "previous term" under the Office Lease was 3 years at $950 per month or $34,200. Five percent of this "previous term," under C–3's reading of the lease, would yield a new maximum monthly rent of $1,710.

Similarly, under the Hangar Lease, C–3 maintains that "original term" refers to 5 years at $1,459.61 per month or $87,576.60. "Ten percent of the original term," in C–3's view, provides for a new monthly maximum rent of $8,757.66.

The determination of whether a contract term is ambiguous is a matter of law. *Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 411 P.2d 868 (1966). A written contract is ambiguous when it is reasonably capable of being understood in more than one sense. *Ladum.* Words in a contract are to be given their ordinary meaning unless the context dictates otherwise. *Pine Corp. v. Richardson,* 12 Wn. App. 459, 530 P.2d 696 (1975).

We hold that the renewal rent provisions are not ambiguous and affirm the trial court's construction. The language of the leases does not justify the complex calculations urged by C–3. The Office Lease provides for a new monthly rent which differs from the old monthly rent by 5 percent or less. Similarly, the Hangar Lease provides for a 10 percent maximum increase in monthly rent upon renewal. "Amount" refers to the amount of the increase or decrease, and "previous term" and "original term" are descriptive only of the subject to which the increase or decrease shall be applied, *i.e.,* the previous monthly rental.

C–3 having failed to raise a genuine issue of material fact, a trial would be useless and summary judgment was proper.

The judgment is affirmed.

WILLIAMS and CORBETT, JJ., concur.